Frederick LASHLEY,
Plaintiff-Appellant,

v.

STATE of Missouri,
Defendant-Respondent.

No. 50204.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 14, 1986.

Motion for Rehearing and/or Transfer
Denied Nov. 18, 1986.

Application to Transfer Denied
Jan. 13, 1987.

**32**

Stormy B. White, Asst. Public Defender, Clayton, for plaintiff-appellant.

Michael R. Whitworth, Asst. Atty. Gen., Jefferson City, for defendant-respondent.

REINHARD, Judge.

Movant appeals from the denial of his Rule 27.26 motion after an evidentiary hearing. We affirm.

Movant was convicted of capital murder after a jury trial and sentenced to death. His conviction was affirmed on direct appeal by the Missouri Supreme Court in *State v. Lashley*, 667 S.W.2d 712 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984), which contains a detailed discussion of the murder. Movant subsequently filed a pro se Rule 27.26 motion and counsel was appointed. Counsel then filed an amendment to the 27.26 motion.

Movant asserts on appeal that the court erred in denying his motion to vacate because: (1) the jury was "death qualified"; and (2) counsel was ineffective because they failed to present evidence of movant's diminished capacity and drugged condition at the time of the homicide during either the guilt phase or penalty phase of movant's trial.

In order for movant to prevail on his claim that he was denied effective assistance of counsel he must demonstrate that counsel "fail[ed] to exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances and that he was prejudiced thereby." *Seales v. State*, 580 S.W.2d 733, 736 (Mo. banc 1979). Furthermore, "when a defendant challenges a death sentence ... the question is whether there is a reasonable probability that, absent the errors, the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 698 (1984).

After taking judicial notice of the court files, the motion court heard testimony from six witnesses presented by movant, including Kevin Curran, who was one of movant's attorneys at trial. The court found adversely to movant on all of the issues and grounds alleged in his motion and specifically stated: "After listening to Mr. Curran explain his and Mrs. Liesingring's reasoning for their decisions of trial strategy this court is convinced that they were not ineffective."

Our examination of the record leads us to the conclusion that the trial court's determination was not clearly erroneous. A court-ordered mental examination of movant under Chapter 552 was conducted by Dr. Parwatikar, a psychiatrist employed by the Department of Mental Health, approximately four months after the offense occurred. Dr. Parwatikar reported:

> [Movant] seems to be functioning at an average range of intelligence and does not seem to show any clinical signs of organic brain dysfunction. His retention and recall was adequate and memory for recent and remote events was normal. In spite of his admission that he was high on drugs at the time of alleged offense, he was able to recall most of the events quite lucidly

> .　　.　　.　　.　　.

> Intellectually, Mr. Lashley is able to function in the borderline to low average range which is sufficient for him to be able to understand the proceedings against him and to assist his attorney in his own defense.

The report further stated:

> Mr. Lashley seems to be able to understand the gravity of the situation, the

charges pending against him and is capable of discussing various alternatives that are available to him. It is somewhat surprising that in spite of his age he seems to have some knowledge of his rights and lines of defenses.

Mr. Lashley claims that he was high on drugs and had indeed done PCP causing him to be intoxicated, however, he was able to recall all of the events precipitating his stabbing of his cousin and his main theme appears to be that the stabbing had occurred because of an accidental self-defense type maneuver on his part rather than a deliberate knowledgeable act. Although it can be assumed that the drugs and alcohol that he had ingested had something to do with his mentation, there is no objective witness or data which can corroborate his part of the story. If one goes by the available facts as well as his statement to the police, then it can be stated that he knew and appreciated the nature, quality and wrongfulness of the alleged offense and was capable of conforming his conduct to the requirements of law.

Dr. Parwatikar therefore concluded that: (1) movant did not have a mental disease or defect within the meaning of Chapter 552; (2) he understood the charges pending against him and was capable of assisting his attorney in his defense; and (3) at the time of the alleged offense he knew and appreciated the nature, quality and wrongfulness of the alleged action and was capable of conforming his conduct to the requirements of law.

Dr. Parwatikar testified at the motion hearing that it was "possible" that movant's alleged ingestion of drugs would have affected his ability to premeditate; however, Dr. Parwatikar said that it was unlikely that a person under the influence of PCP would have been able to "lay and wait for his intended victim for twenty minutes." He also indicated that had there been corroboration of movant's story he would have "looked into it further."

Mr. Curran testified that he was counsel for movant at movant's trial for murder and that movant had told him that he had been smoking PCP and drinking that day. Movant mentioned two witnesses to him. Mr. Curran's investigator talked to one but could not find the other, and the witness the investigator interviewed could not pinpoint the date she had seen movant intoxicated. According to movant, Douglas Anderson, the witness that could not be located, would have testified that he and movant had been drinking and "gotten high" on PCP on the day of the crime. Mr. Curran testified regarding the reasons that a diminished capacity defense was not used, and said that it was a strategy decision:

Primarily it was after having the psyche [mental examination] done I had a conversation with a Dr. Parwatikar in the building. I ran into him I believe a few weeks after the psyche being done and I asked him about presenting a PCP defense, being high on PCP, and Dr. Parwatikar told me that he thought there was not any evidence of that and I could not do it and the reasons I recall he told me were that Frederick had a good recollection of it and I believe also in the psyche it said he had a good recollection of it.

He also said that the way Frederick described the commission of the act and the way it was carried out in the statement of how he described it to him Dr. Parwatikar did not feel it was consistent to him with being high on PCP and that was primarily the reasons we did not go with it.

Mr. Curran further testified that Dr. Parwatikar's statements to him also dissuaded him from presenting a theory of diminished capacity during the punishment phase of the trial. He and his co-counsel discussed strategy among themselves and with several other attorneys, and Mr. Curran said that movant concurred with the tactical decisions that were formulated.

Demetrius Pate, who was present when movant was arrested, also testified for movant at the 27.26 hearing. Pate said that on the night of the murder he was

sitting on his porch reading a newspaper when movant came by, "blew the horn", and said, "Come here." In regard to movant's condition at that time, Pate stated, "Well, he was not high or nothing like that. He seemed like a normal person like I am right now. Just normal." After the police stopped them later that night, movant acted weird, "like something was on his mind, he did something and did not want to tell me ..."

Dr. Michael Armour, a psychologist at Malcolm Bliss Mental Health Center, testified as to the effect of PCP and the difference between being high on PCP and intoxicated with alcohol. He said, "When a person ingests alcohol, black outs are more common, but with PCP, some memory loss can occur, and at the same time a person can still be capable of remembering what is going on." In his opinion, a person's "ability to form intent ... would be impaired because of the nature of the drug and the affect (sic) it has on the reasoning process." In response to a question which asked him to assume certain facts regarding defendant's conduct before and during the murder he said, "Given that sequence ... I'll have to say that would influence my opinion more toward a person that is not heavily under the influence of the drug."

Movant testified that he told his attorney he was under the influence of drugs on the day of the murder. He said that he and Anderson started smoking PCP in front of Anderson's house, then they went to get some liquor and "drank and got high again." Movant said he left at about 6:00 p.m to "make some money." He then testified about the details of the crime. When asked whether he was intoxicated when he committed the crime he replied, "Yes, somewhat, yes cause—well—." Movant identified a picture of Douglas Anderson, and a death certificate was adduced which indicated that Anderson died on October 24, 1984, prior to the motion hearing but subsequent to movant's original trial.

We believe there was a reasonable basis for counsels' trial strategy and their determination not to present evidence regarding movant's intoxication and use of PCP. It has long been held that the manner in which trial strategy is applied does not provide a basis for an attack on the effectiveness of one's trial counsel. *Olds v. State*, 655 S.W.2d 818, 819 (Mo.App.1983).

Movant's reliance on *Adams v. State*, 677 S.W.2d 408 (Mo.App.1984), is misplaced. In that case the western district reversed the circuit court's judgment and ordered movant's sentence vacated. Movant contended that he had been denied effective assistance of counsel because counsel had waived his objection to the admission of the gun which formed the basis for movant's conviction for carrying a concealed weapon. Counsel had filed a motion to suppress the pistol prior to trial which was denied; however, the western district determined that "an objection ... to the admission of the pistol as the unlawful fruit of an illegal arrest would have had merit." *Id.* at 413. At the motion hearing in that case, counsel testified that his failure to object at trial was "possibly" because of trial strategy. It was clear that the movant in that case could not have been convicted without the admission of the gun, and the western district concluded that "there could have been no 'trial strategy' in letting this evidence in." *Id.* at 412.

In the present case, counsels' decision not to present evidence of movant's alleged intoxication was a matter of trial strategy, and was justifiable as such. *Adams* is therefore inapplicable to the case at bar, and movant's argument is without merit.

Movant's contention that the "death qualification" of the jury deprived him of his constitutional right to a jury selected from a fair cross-section of the community is also without merit. *See, State v. Malone*, 694 S.W.2d 723, 726–727 (Mo. banc 1985); *Lockhart v. McCree*, 106 S.Ct. 1758 (1986).

Judgment affirmed.

SMITH, P.J., and DOWD, J., concur.