**Willie Ray TURNER, Appellant,**

v.

**William ARMONTROUT, and Attorney General of the State of Missouri, Appellee.**

No. 87–1774.

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1988.

Decided April 21, 1988.

Howard B. Eisenberg, Carbondale, Ill., for appellant.

Stephen D. Hawke, Jefferson City, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, and FLOYD R. GIBSON, and WRIGHT *, Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge.

Willie Ray Turner appeals an order of the district court[1] denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For reversal, Turner argues that there was insufficient evidence to convict him of capital murder and that he was denied due process of law by the exclusion of his accomplice's hearsay declarations. For the following reasons we affirm.

## I. BACKGROUND

Turner was convicted of two counts of capital murder in Missouri state court and sentenced to consecutive terms of life imprisonment without possibility of parole for fifty years. Turner appealed his state court conviction to the Missouri Supreme Court alleging several errors in his trial. The Missouri Supreme Court affirmed Turner's conviction. *State v. Turner,* 623 S.W.2d 4 (Mo. banc 1981), *cert. denied,* 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982). The facts underlying Turner's conviction warrant repeating here. The Mis-

---

* The Honorable Eugene A. Wright, United States Senior Circuit Judge for the Ninth Circuit Court of Appeals, sitting by designation.

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

souri Supreme Court stated the facts as follows:

On December 20, 1978, the bodies of two men were discovered in a liquor store in Caruthersville, Missouri. One of the men, Pierce Neeley, was found near the front of the store lying face down in a pool of blood and beneath his body was a beer bottle with Turner's fingerprint. The other man, William "High Pockets" Parker, the store's operator, was discovered lying on his back on the floor behind a counter. Parker was a stocky man approximately 6 feet 3 inches tall and weighing about 260 pounds. With the exception of one broken beer bottle the store was undisturbed evidencing little or no sign of a struggle. Parker's billfold and the store cash register had been emptied of money.

Parker's autopsy revealed multiple stab wounds in the chest and abdomen coupled with a large laceration on the back of his head caused by a blunt instrument which possibly produced a concussion. Neeley's autopsy showed that Neeley suffered nine stab wounds to the front and six to the back of his torso and a scalp laceration from a blunt object which may have caused unconsciousness. The autopsies indicated that both Parker and Neeley probably died from their chest wounds.

Frances Mitchell testified that on the evening of the liquor store robbery Turner came to the Mitchell home and later left with her husband, Johnny Mitchell, who was armed with a pistol. This testimony was corroborated by Frances Mitchell's daughter, Brenda Hall. Later, when Johnny returned home at approximately 10:00 p.m., he gave Brenda and her siblings some change.

On February 20, 1979, Turner gave the police a videotaped statement. In his statement he admitted that he went to Mitchell's home and that Mitchell told him he wanted to go somewhere and "make him a hussle

[sic]." Turner indicated that this meant that Mitchell wanted to commit a robbery. They left the house in Turner's truck and went to the liquor store, arriving sometime after dusk. Mitchell, armed with a pistol and a knife, told Turner that he knew the two men in the store and that he was going into the store to borrow some money from them and "if he didn't get it one way he was going to get it other one." Turner, wearing a blue repairman's outfit bearing the name "Willie," and Mitchell entered the store and each purchased a beer. Parker and Neeley were both inside the store and Turner and Mitchell returned to Turner's truck to wait for Neeley to leave the store. Mitchell told Turner to drive around the corner and park the truck a block away from the store. When Turner returned to the store, he found Mitchell standing over Neeley striking him with a gun. Neeley had been stabbed in the back and when Neeley attempted to get up Turner hit him on the head with a beer bottle. Mitchell struck Neeley again with a beer bottle, breaking it, and then struck him again with the gun. Finally, Turner and Mitchell left the store through the rear door and ran through the alley to Turner's truck.

Turner claims that he then asked Mitchell why he killed the two men and Mitchell stated that he did not want any witnesses. These factual findings by the Missouri Supreme Court are entitled to the presumption of correctness pursuant to 28 U.S.C. § 2254(d). *See Sumner v. Mata,* 455 U.S. 591, 592–93, 102 S.Ct. 1303, 1304–05, 71 L.Ed.2d 480 (1982). Mitchell was tried separately, prior to Turner's trial, and convicted of capital murder.[2]

In this appeal Turner has abandoned many of the allegations of error which he raised before the Missouri Supreme Court.[3] Turner's only remaining challenges to his state court conviction include an alleged insufficiency of the evidence to support his

---

2. Mitchell's convictions for capital murder were affirmed by the Missouri Supreme Court in *State v. Mitchell,* 611 S.W.2d 223 (Mo. banc 1981).

3. Turner argued before the Missouri Supreme Court that his sentences violated the Cruel and

Unusual Punishment provisions of the United States and Missouri Constitutions and that the trial court erred in refusing to permit his defense counsel to withdraw or to permit Turner to personally call and examine witnesses. *State v. Turner,* 623 S.W.2d at 6.

capital murder convictions and the alleged improper exclusion of hearsay testimony as to his accomplice's declarations against penal interests. We will address these challenges seriatim.

## II. DISCUSSION

### A. Sufficiency of the Evidence

■ Turner argues that the evidence was insufficient to establish the required mental state for capital murder. In reviewing for sufficiency of evidence, this court's inquiry is limited to "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (citation omitted, emphasis in original). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326, 99 S.Ct. at 2793.

In light of this standard of review, Turner's challenge to the sufficiency of the evidence is futile. It is significant that Turner was charged as an accomplice to capital murder. The elements of state law crimes are defined by state law. *See Jackson v. Virginia,* 443 U.S. at 324, 99 S.Ct. at 2791. Under Missouri law:

Any person who unlawfully, willfully, knowingly, deliberately, and with premeditation kills or causes the killing of another human being is guilty of the offense of capital murder.

Mo.Rev.Stat. § 565.001 (1978).

A person with the required culpable mental state is guilty of an offense if it is committed by his own conduct *or by the conduct of another person for which he is criminally responsible,* or both.

Mo.Rev.Stat. § 562.036 (1978) (emphasis added). Additionally, under Missouri Revised Statutes § 562.041, subd. 1(2):

A person is criminally responsible for the conduct of another when * * * [e]ither before or during the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

Mo.Rev.Stat. § 562.041, subd. 1(2) (1978).

According to Missouri law, "Premeditation and deliberation *may be inferred from the circumstances of the homicide * * * ** Defendant need not personally have committed the killing; it is sufficient that he was present and participated in concert with others in the commission of the crime, or aided and assisted in its commission." *State v. Strickland,* 609 S.W.2d 392, 394–95 (Mo. banc 1980) (citations omitted, emphasis added).

Thus, the jury could have found Turner guilty if they found facts to support either one of two possible scenarios: (1) Turner acted alone in committing the murders, or (2) Turner acted knowingly and with a common purpose in assisting his accomplice in the killings. Therefore, we must affirm the denial of habeas relief if there is sufficient evidence to support either scenario.

Here, circumstantial evidence supporting the jury's conviction abounds. As the courts below have observed, the jury might well have discounted the exculpatory portions of Turner's videotaped statement and focused on the incriminating circumstantial evidence: e.g., the fact that two men were stabbed to death without evidence of a struggle; the fact that the victims, had they survived, might have identified Turner by his distinctive jacket with his name on it; and the fact that Turner knew Mitchell was armed with a knife and a gun and yet participated in the robbery, even to the point of, at a minimum, striking the mortally wounded Neeley over the head when he tried to raise himself. All would work to support an inference of the necessary elements of capital murder.

Turner's citation to *United States v. Pechenik,* 236 F.2d 844 (3rd Cir.1956), for the proposition that disbelief of Turner's testimony does not supply proof of intent is neither controlling nor on point. Here *ob-*

*jective circumstantial* evidence damned him. The evidence was sufficient to support Turner's conviction.

### B. Exclusion of Mitchell's declaration against penal interests

During Turner's trial, his counsel offered the testimony of Michael Cooper. Cooper testified outside the presence of the jury that he was visiting Turner the day after the murders and, unaware of Cooper's presence, Mitchell admitted to Turner that he killed Parker and Neeley. Cooper then entered the room and Mitchell asked him if he "knowed who wasted those two dudes." In addition, Mitchell made similar admissions directly to Cooper on two subsequent occasions. The state objected to Cooper's testimony as hearsay and was sustained.

"Generally in Missouri, declarations against penal interests are not admissible exceptions to the hearsay rule in criminal proceedings." *State v. Turner*, 623 S.W.2d at 8.

■ Ordinarily the admissibility of evidence at trial is a matter of state law and will not form the basis for federal habeas relief. *Manning–El v. Wyrick*, 738 F.2d 321, 322 (8th Cir.), *cert. denied*, 469 U.S. 919, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984). A federal court may, however, grant habeas relief when a state court's evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process. *Id.* "In making this determination courts must review the totality of the facts in the case pending before them and analyze the fairness of the particular trial under consideration." *Maggitt v. Wyrick*, 533 F.2d 383, 385 (8th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976) (citations omitted).

■ Turner argues that the Missouri courts denied him due process of law by excluding the proffered testimony of Cooper.[4] He relies on *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) and *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979). In *Chambers*, the Supreme Court noted the validity and purpose of the hearsay rule but stated that in "circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers v. Mississippi*, 410 U.S. at 302, 93 S.Ct. at 1049.

Turner's argument was cogently analyzed and rejected by the Missouri Supreme Court:

While in a case such as *Chambers*, where substantial indicia of reliability appear *and declarant's complicity if true would exonerate the accused*, declarant's averments against an interest penal in nature may not be excluded, such circumstances requiring admission of the hearsay are missing here. When called to testify at defendant's trial, Johnny Mitchell refused, asserting his Fifth Amendment privilege, and thus was unavailable for a test of credibility. Nor was there corroborating evidence to insure the trustworthiness of his purported declarations. Equally important, the statements in themselves were not inconsistent with the showing of defendant's guilt. Defendant had placed himself at the scene and admitted a part in the planning and perpetration of the crime. Hence, Cooper's testimony might have aided the conviction, for if from other evidence the jury believed defendant guilty as an accomplice, the statements established Mitchell's complicity as a "principal." The proffered evidence did not, as in *Chambers*, exclude defendant as perpetrator by implicating Mitchell as an unabetted murderer.

We also observe that the dangers inherent in opening the door to extrajudicial confessions made by one not a party to the proceeding militate against extending the rule of *Chambers* beyond the facts presented there. * * *

Defendant further complains reversal is required under the holding of *Green v. Georgia*, * * * that exclusion of similar evidence, proffered during the punish-

---

4. Cooper's testimony was introduced by the prosecution and admitted in Mitchell's trial.

ment phase of trial, constituted denial of due process. Certainly such statements, cloaked with the safeguards for trustworthiness found in *Green*, could be pertinent to the issue of punishment; however, in the case *sub judice*, not only was Cooper's testimony *not* offered during the punishment phase of defendant's bifurcated proceedings, but its exclusion could not have been found prejudicial as defendant received the minimum punishment mandated for capital murder.

Finally, defendant claims unfairness by the admission of Cooper's testimony in Mitchell's trial and its exclusion here, but in so arguing defendant ignores a fundamental distinction. Cooper's testimony was admitted against Mitchell in a proceeding where Mitchell, as declarant, was in court and could choose to testify to refute Cooper's claim. In the present case, Cooper's testimony was offered against the State which could not force Mitchell to testify and hence had no means of testing the truthfulness of Mitchell's alleged statements. It is a well established "fact of trial life" that certain items of evidence may be introduced by one party and yet not by another. * * *

*State v. Turner*, 623 S.W.2d at 9–10 (citations and footnotes omitted, emphasis in original).

The Missouri Supreme Court's analysis is correct. Here the proffered testimony was *not* inconsistent with the showing of Turner's guilt and *could not* exonerate him of accomplice liability.

In order to convict a defendant of capital murder for a murder which the defendant did not actually commit it must be shown that the defendant knew of the planned offense, agreed to participate in it and did participate in it. *State v. Roberts*, 709 S.W.2d 857, 860 (Mo. banc), *cert. denied*, —— U.S. ——, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986). Therefore, under Missouri law, proving that Mitchell stabbed Parker and Neeley would not have exonerated Turner of accomplice liability for the offense of capital murder. Further, nothing in the testimony was relevant to Turner's state of mind. The totality of the facts supports Turner's conviction as an accomplice to capital murder.

### III. CONCLUSION

We hold that the district court correctly denied Turner's petition for a writ of habeas corpus. There was more than a sufficient amount of evidence adduced at Turner's trial to convict him as an accomplice to capital murder. Further, Turner has failed to satisfy his burden of proving that the exclusion of Cooper's testimony was so conspicuously prejudicial and of such magnitude that it fatally infected his trial and deprived him of fundamental fairness in violation of the Constitution's due process protection.

Accordingly, we affirm the judgment of the district court.