**Frederick LASHLEY, Appellant,**

v.

**William ARMONTROUT, Warden, Missouri Department of Corrections, Appellee.**

No. 90–1036.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 8, 1990.

Decided March 4, 1992.

**7.** *United States v. Coleman,* No. 3–90–25 (D.Minn. June 18, 1991) (order denying defendant's Rule 41(e) motion).

**1496**

H. William Brown, Kirkwood, Mo., argued, for appellant.

Ronald L. Jurgeson, Kansas City, Mo., argued, for appellee.

Before ARNOLD * and FAGG, Circuit Judges, and WATERS,** District Judge.

ARNOLD, Circuit Judge.***

Frederick Lashley, a Missouri prisoner convicted of capital murder, appeals the District Court's denial of his 28 U.S.C. § 2254 application for a writ of habeas corpus. We affirm the conviction, but reverse and remand for resentencing.

## I.

Lashley "brutally took the life of [a] physically infirm woman, who for many years had cared for and reared him, in order to rob her." *State v. Lashley*, 667 S.W.2d 712, 716 (Mo.), *cert. denied*, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984). Lashley broke into his foster mother's home while she was away, darkened the front room, and lay in wait. When his foster mother returned, he struck her over the head with a cast-iron skillet, using enough force to break the skillet into two pieces. She fell to the floor, and a struggle ensued. Knowing his foster mother had a soft spot in her skull, Lashley ended the struggle by plunging a butcher knife into this vulnerable area. He then stole $15 from his foster mother's purse, took the keys to her car, and departed. Lashley's foster mother died two days later.

A state-court jury convicted Lashley of capital murder, and he was sentenced to death. The Missouri Supreme Court affirmed the conviction and death sentence. *Id.* Lashley unsuccessfully sought state postconviction relief before bringing this federal habeas action. *See Lashley v. State*, 721 S.W.2d 31 (Mo.App.1986), *cert. denied*, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 518 (1987). On appeal from the District Court's denial of habeas relief, he raises a number of issues, and we address them in turn.

## II.

### A.

▮ Lashley contends he received ineffective assistance of counsel because his trial attorney failed adequately to investigate and raise diminished capacity as a defense during the guilt phase of his trial and as a mitigating factor during the penalty phase. As a reviewing court we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). To prevail on his ineffective-assistance-of-counsel claim, Lashley acknowledges that he must show his trial attorney's representation was deficient, and that the deficient performance prejudiced his defense. *Id.* at 687, 104 S.Ct. at 2064. In attempting to make this showing, Lashley does not challenge the findings made by the Missouri Court of Appeals, *Lashley v. State*, 721 S.W.2d at 32–34.

During the state postconviction hearing, Lashley's trial attorney testified that he considered presenting a theory of diminished capacity during the guilt and penalty phases of the trial based on Lashley's claim that he was high on drugs when he killed his foster mother. The attorney decided not to do so after he evaluated the evidence available to support the theory and discussed trial strategies with co-counsel, several other attorneys, and Lashley. *Id.* at 32–33.

Counsel investigated petitioner's claimed ingestion of drugs, but the results of this investigation did not substantiate Lashley's story. The psychiatrist who examined Lashley told the attorney there was no evidence Lashley was high on drugs the night of the murder. *Id.* at 33. Similarly, the two witnesses petitioner named to support his claim did not produce useful information. *Id.* One witness could not be

* The Hon. Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

** The Hon. H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas, sitting by designation.

*** The signer of this opinion wishes to express his thanks to Judge Fagg for significant contributions to its composition.

located by the attorney's investigator. The other could not pinpoint the date she had seen Lashley intoxicated. A third witness, present when the police arrested Lashley, testified at the postconviction hearing that Lashley did not appear high or act abnormal until after his arrest. *Id.* at 33–34. This left petitioner himself as the only witness who could testify that he was under the influence of drugs on the day of the murder. Lashley's attorney believed he would be a liability as a defense witness, and Lashley's psychiatrist was unwilling to put any stock in his uncorroborated story. *Id.* at 33.

A defense attorney is not ineffective for not presenting an implausible theory of defense or mitigation. "[T]he Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense ..., counsel cannot create one and may disserve the interests of his clients by attempting a useless charade." *United States v. Cronic,* 466 U.S. 648, 656 n. 19, 104 S.Ct. 2039, 2045 n. 19, 80 L.Ed.2d 657 (1984) (citation omitted); see also *Krist v. Foltz,* 804 F.2d 944, 946–47 (6th Cir.1986) (citing *Cronic* and holding an attorney is not required to present a baseless intoxication defense); *cf. Thompson v. Jones,* 870 F.2d 432, 434–35 (8th Cir.1988) (holding attorney not ineffective for failing to raise meritless issues on appeal).

In this case, Lashley's attorney thoroughly investigated the claim of diminished capacity. The attorney's investigation, however, turned up no support for Lashley's assertions. This left the attorney with nothing more than an unimpressive client, telling an improbable and uncorroborated story, which was effectively refuted by his own calculated behavior on the night of the murder. Lashley's attorney then made an informed, strategic decision against presenting evidence that his client was drug-impaired, and Lashley concurred with his attorney's decision. *Lashley v. State,* 721 S.W.2d at 33. Given these circumstances, the Missouri Court of Appeals held "there was a reasonable basis for [the attorney's] trial strategy." *Id.* at 34. We agree and conclude that the attorney acted within the bounds of professionally competent assistance. *Strickland,* 466 U.S. at 688, 690–91, 104 S.Ct. at 2052, 2065–67.

## B.

■ The relevant facts pertaining to this issue are stated in *State v. Lashley,* 667 S.W.2d at 714–15. In short, following the penalty phase of the trial, the jury returned an improperly worded verdict imposing the death penalty. Lashley's attorney agreed that the form of the verdict was improper. *Id.* at 715. Over the objections of the attorney, the trial court informed the jurors that their verdict was not in the proper form and told them to review the court's instructions. The court then excused the jury to deliberate further. After a short time, the jury returned a verdict in proper form, again imposing the death penalty. The trial court polled the jurors to ensure the verdict was unanimous.

Lashley contends that the trial court's refusal to accept the jury's initial verdict placed him in double jeopardy and interfered with his right to a jury trial. These claims are without merit. A trial court may ask a jury to correct its verdict without violating the Fifth and Sixth Amendment rights Lashley raises. See *United States v. Mears,* 614 F.2d 1175, 1179 (8th Cir.), *cert. denied,* 446 U.S. 945, 100 S.Ct. 2174, 64 L.Ed.2d 801 (1980) (jury may correct verdict that is improper due to inadvertent error); *Brown v. Gunter,* 562 F.2d 122, 124–25 (1st Cir.1977) (defendant's Fifth and Sixth Amendment rights not violated by state trial court's allowing jury to correct its verdict from not guilty to guilty). We agree with the Missouri Supreme Court that the trial court "could not have handled the situation in a more neutral manner." *State v. Lashley,* 667 S.W.2d at 715. Under Missouri law, a "jury's verdict is not binding until it is accepted by the court and the jury discharged." *Id.* The trial court simply complied with Missouri law by requiring the jury to deliberate further and to return a verdict in proper form, *id.,* and Lashley's constitutional rights were not impaired.

## C.

Lashley next contends the prosecution presented insufficient evidence of premeditation, deliberation, and intent to commit capital murder. The State responds that Lashley is procedurally barred from raising this claim because he failed to include the claim in his appeal to the Missouri Supreme Court. Although the State may be correct, we nonetheless choose to address the merits of Lashley's claim. *See Long v. Iowa,* 920 F.2d 4, 6 n. 2 (8th Cir.1990) (when claim lacks merit, court may bypass procedural bar and deny relief on the merits).

■ Lashley does not challenge the controlling principles of state law. In Missouri, premeditation and deliberation properly may be inferred from the circumstances of the crime. *Turner v. Armontrout,* 845 F.2d 165, 168 (8th Cir.), *cert. denied,* 488 U.S. 928, 109 S.Ct. 315, 102 L.Ed.2d 333 (1988). Additionally, premeditation and deliberation need not exist in the assailant's mind for any particular period of time. *State v. Roberts,* 709 S.W.2d 857, 863 (Mo.), *cert. denied,* 479 U.S. 946, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986) (premeditation); *State v. McDonald,* 661 S.W.2d 497, 501 (Mo.1983), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985) (deliberation).

■ Having reviewed the record in the light most favorable to the prosecution, we conclude that a "rational trier of fact could have found the essential elements of [capital murder] beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The record shows Lashley broke into his foster mother's home, waited in ambush for her to return, and deliberately plunged a knife through a known soft spot in her skull. In our view, a rational jury could infer that by lying in wait and inflicting a selective mortal wound, Lashley did premeditate, deliberate, and intend to murder his foster mother.

## D.

■ Lashley next contends he was denied his Sixth Amendment right to a fair and impartial jury because the trial court violated *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), when it excused for cause jurors who expressed an unwillingness to impose the death penalty. Lashley argues that five of the jurors did not demonstrate sufficient reluctance about the death penalty to sustain the prosecution's challenges for cause. We disagree. The record shows that each of these jurors unequivocally indicated an unwillingness or inability to consider the death sentence in the event of a capital murder conviction. The Supreme Court has made clear that jurors opposed to the death penalty may be excused for cause if their opposition would " 'prevent or substantially impair the performance of [their] duties ... in accordance with [the] instructions and [the] oath.' " *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (quoting *Adams v. Texas,* 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980)) (footnote omitted). The trial court properly excused these jurors for cause.

## E.

During the guilt phase of the trial, the prosecution introduced a number of items recovered from the murder scene, including a hammer found next to a piece of the broken skillet. According to Lashley, the hammer was inadmissible, and the prosecution introduced it to inflame the jury. The trial court ruled the hammer was admissible under state law, and the Missouri Supreme Court affirmed that decision. 667 S.W.2d at 714. Lashley contends that he was denied his due-process right to a fair trial by the erroneous admission of the hammer into evidence.

■ "The admissibility of evidence is a matter of state law, and we review admissibility rulings in a federal habeas corpus action 'only when the [claimed] error ... is so prejudicial that it amounts to a denial of due process.' " *Kuntzelman v. Black,* 774 F.2d 291, 292 (8th Cir.1985) (citation omitted). "A denial of due process occurs when the error is 'gross, conspicuously prejudicial or of such import that the trial was

fatally infected.'" *Redding v. Minnesota,* 881 F.2d 575, 579 (8th Cir.1989) (citation omitted), *cert. denied,* 493 U.S. 1089, 110 S.Ct. 1158, 107 L.Ed.2d 1061 (1990). In this case, we agree with the district court that "[w]hether [Lashley] struck his victim with a skillet ... or struck her with a hammer ... does not at all change the character and nature of his act." The hammer was introduced along with other items recovered from the murder scene, and "[a] photograph showing the hammer and piece of skillet had already been received in evidence—without objection." *State v. Lashley,* 667 S.W.2d at 714. "[T]he only mention of the hammer in closing arguments was made by defense counsel[, and] it is beyond dispute that the butcher knife wielded by [Lashley] was the death weapon." *Id.* With these circumstances in mind, we cannot conclude the admission of the hammer denied Lashley a fair trial.

### F.

■ Lashley also contends the District Court erred in dismissing his application for a writ of habeas corpus without holding an evidentiary hearing. This argument has no merit. "Dismissal without a hearing is ... proper [when] the facts are not in dispute or [when] the dispute can be resolved on the basis of the record." *Lindner v. Wyrick,* 644 F.2d 724, 729 (8th Cir.), *cert. denied,* 454 U.S. 872, 102 S.Ct. 345, 70 L.Ed.2d 178 (1981). Lashley had a full evidentiary hearing during his state postconviction proceeding. On the basis of the

trial record, the postconviction transcript, and the parties' briefs, the District Court denied habeas relief. Petitioner has failed either to show how the state-court record is deficient, or to indicate what additional information could be produced at another evidentiary hearing that would alter the outcome of this habeas action. The District Court properly declined to hold an evidentiary hearing.

### G.

■ Lashley contends he received ineffective assistance of counsel because his trial attorney failed to introduce evidence to support a mitigating-circumstance instruction as to no significant history of past criminal activities. This claim is procedurally barred because it was not included in the postconviction appeal to the Missouri Court of Appeals. Petitioner contends his postconviction counsel was ineffective in failing to preserve the point, and that this is cause for his procedural default. We disagree. The Supreme Court recently made clear that ineffective assistance of postconviction counsel is not cause to excuse procedural default. *Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 2567–68, 115 L.Ed.2d 640 (1991). "As [Lashley] does not argue in this [c]ourt that federal review of his claim[ ] is necessary to prevent a fundamental miscarriage of justice, he is barred from bringing [this] claim in federal habeas." *Id.* 111 S.Ct. at 2568.[1]

---

1. The writer of this opinion (speaking for himself alone on this point) would take a different approach to the question of trial counsel's failure to introduce affirmative evidence to show that petitioner had no significant criminal history. In my view, trial counsel made a reasonable effort to introduce this evidence but was prevented from doing so by an incorrect ruling of the state trial court. The court told counsel that if she insisted on offering evidence that Lashley had no criminal record, it would permit the state to counter this evidence by showing that petitioner had committed juvenile offenses. This ruling was flatly contrary to state law, which provides:

1. No adjudication by the juvenile court upon the status of a child shall be deemed a conviction nor shall the adjudication operate to impose any of the civil disabilities ordinarily resulting from conviction nor shall the child be found guilty or be deemed a criminal by reason of the adjudication.

\* \* \* \* \* \*

3. After a child is taken into custody as provided in Section 211.131, all admissions, confessions, and statements by the child to the juvenile officer and juvenile court personnel and all evidence given in cases under this chapter, as well as all reports and records of the juvenile court *are not lawful or proper evidence* against the child and *shall not be used for any purpose whatsoever in any proceedings, civil or criminal,* other than proceedings under this chapter.

Mo.Rev.Stat. § 211.271 (1978) (emphasis mine). I believe that this ruling, in and of itself, is a separate and distinct violation of the principle of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954,

### H.

■ Although we find no merit in any of Lashley's other claims, we agree with him that the Missouri trial court violated the Eighth Amendment by refusing to give the mitigating-circumstance instruction Lashley requested—i.e., "The defendant has no significant history of prior criminal activity." Mo.Rev.Stat. § 565.012.3(1) (Supp.1982) (current version at Mo.Rev. Stat. § 565.032.3(1) (Supp.1990)).

During a conference preceding the penalty phase, the defense attorney made a motion in limine to prevent the State from introducing any evidence of Lashley's juvenile record. Missouri Revised Statutes § 211.271 (1978) prohibits the introduction of a defendant's juvenile record for *any* purpose. The statute also says that a juvenile adjudication is not a criminal act. This Court assumes, although Lashley's attorney did not say so, that her basis for this motion was that statute. In any event, the trial judge never ruled on Lashley's motion, but appeared to agree with the State that if the defense opened the door with evidence of Lashley's "criminal history" (or lack thereof), the prosecutor could walk right through it with evidence of Lashley's juvenile record. Consequently, the defense did not introduce any evidence of Lashley's lack of criminal history. The prosecution, however, also failed to introduce any evidence of adult criminal activity by Lashley, and because of his age at the time of the offense—17 years and 30 days, an adult for purposes of criminal prosecution a mere 30 days—it is unlikely that the prosecution could have supported a finding of a *"significant* history of prior criminal activity." (Emphasis ours.) At any rate, it did not do so, as no evidence whatever was introduced by either side as to the defendant's prior criminal record. Despite the blank record

on Lashley's prior criminal history, the trial judge refused the defense attorney's request for the mitigating-circumstance instruction.

The Eighth Amendment requires a trial court to allow the jury to consider, as a mitigating factor, *"any* aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978). The Court's language strongly suggests, if it does not dictate, a liberal allowance of mitigating-circumstance evidence and instructions by trial courts. What's more, although not necessary to our decision, the mitigating circumstance involved in this case was expressly mentioned by a Missouri statute. *Lockett* obligated the Missouri trial court to give the requested instruction, if it was warranted by the evidence. We believe that it was.

■ *Lockett* makes it clear that the defendant is not required to meet any particular burden of proving a mitigating factor to any specific evidentiary level before the sentencer is permitted to consider it. The evidence before the jury in this case presented a blank slate. As far as the jury was concerned, Lashley had no significant history of prior criminal activity, and, therefore, he was entitled to have the jury consider that fact as a mitigating circumstance. The trial judge's failure to give the requested instruction under these circumstances violated the defendant's Eighth Amendment rights as expressed in *Lockett.*

■ Accordingly, the Missouri trial court must promptly commence proceedings to resentence the petitioner, unless the State wishes to reduce his sentence to life

---

57 L.Ed.2d 973 (1978), discussed below in part H. of this opinion.

The other two members of this Court do not agree with this view. They believe—and this is therefore the holding of this Court on the point—that the trial court was not called upon to rule in respect to the admissibility of defendant's juvenile record. Thus, the majority does not agree that the record reflects that the trial court prevented defendant's counsel from at-

tempting to prove that defendant had no significant criminal history by ruling or advising her that the state would be permitted to cross examine in respect to defendant's juvenile record if she attempted to offer evidence in respect to his lack of criminal history. Therefore, this Court does not reach the merits of the contention that the trial judge's ruling, contrary to Missouri law, amounted to a distinct *Lockett* violation.

imprisonment. *Lockett* requires the State—which is in a peculiarly advantageous position to show a significant prior criminal history, if indeed Lashley has such a history—to come forward with evidence, or else the court must tell the jury it may consider the requested mitigating circumstance. If the point is raised by the defendant, the state trial judge should determine at the time of resentencing if introduction of such evidence is barred by the Double Jeopardy Clause. See *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). We express no view on the merits of this issue. We simply hold that the lack of any evidence whatever of Lashley's prior criminal activity entitled the defendant to the requested instruction, and the Missouri trial court's failure to give that instruction violated the Eighth Amendment as explained in *Lockett*.

### III.

Insofar as the conviction itself is concerned, we agree with the District Court that it is not invalid under the federal Constitution. With respect to the sentence, however, we reverse, and remand the matter to the District Court with instructions to grant the writ unless the State commences proceedings to resentence the petitioner consistently with this opinion, within such reasonable time as the District Court may fix.

It is so ordered.

FAGG, Circuit Judge, dissenting and concurring.

I dissent from the court's holding in part H, which overturns Lashley's death sentence. I join in parts A–F and concur in part G of the court's opinion. I would thus affirm both Lashley's capital murder conviction and death sentence.

### *Dissent from Part H*

In part H, the court reverses a brutal killer's death sentence because the state trial judge refused to give a mitigating circumstance instruction on a barren record. *Ante* at 1501–1502. Although the court concedes Lashley failed to offer any

evidence showing he had no significant history of criminal activity to support his requested instruction, the court concludes Lashley was entitled to the instruction once he asked for it. In my view, the court's position is contrary to controlling Supreme Court precedent. I thus dissent.

My disagreement with the court is simple: In concluding Lashley was entitled to a mitigating circumstance instruction despite "the lack of any evidence whatever of Lashley's prior criminal activity," *ante* at 1502, the court misapplies *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality). *Lockett* holds the sentencer in a capital case must be permitted to consider mitigating evidence offered by the defendant. *Id.* at 604, 98 S.Ct. at 2964; *Eddings v. Oklahoma*, 455 U.S. 104, 112, 102 S.Ct. 869, 875, 71 L.Ed.2d 1 (1982). When the record contains evidence of a particular mitigating circumstance, the defendant is entitled to have the jury instructed on that circumstance. *Penry v. Lynaugh*, 492 U.S. 302, 319–28, 109 S.Ct. 2934, 2947–52, 106 L.Ed.2d 256 (1989). *Lockett* and *Penry*, however, do not stand for the proposition that state trial courts must instruct juries on mitigating circumstances when supporting evidence has not been presented. Due process requires that state trial courts give mitigating circumstance instructions only when the evidence warrants those instructions. *See Hopper v. Evans*, 456 U.S. 605, 611, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). Indeed, injecting mitigating circumstance instructions into capital cases without supporting evidence would "invite[ ] the jurors to disregard their oaths," and would invariably lead to conjectural and capricious sentencing decisions—the very thing *Lockett* seeks to avoid. *Id.*

I believe the court has made three mistakes in holding "the Missouri trial [judge]'s failure to give [Lashley's requested] instruction violated the Eighth Amendment as explained in *Lockett*." *Ante* at 1502. First, the court is mistaken when it states "*Lockett* makes it clear that [Lashley] is not required to meet any particular burden of proving a mitigating factor ...

before the [jury] is permitted to consider [the factor]." *Ante* at 1501. Contrary to the court's reading of *Lockett,* the Supreme Court expressly left this question open, stating, "[W]e need not address [the] contention ... that it violates the Constitution to require defendants to bear the risk of nonpersuasion as to the existence of mitigating circumstances in capital cases." *Lockett,* 438 U.S. at 609 n. 16, 98 S.Ct. at 2967 n. 16. Since *Lockett,* the Supreme Court has held the Constitution is not violated when a state requires capital defendants to bear this risk. *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 3055, 111 L.Ed.2d 511 (1990) (plurality); *see also id.* 110 S.Ct. at 3066–68 (Scalia, J., concurring) (rejecting *Lockett* as unsound and without constitutional foundation). Based on the holding in *Walton,* I believe it is clear the state trial judge did not violate *Lockett* by refusing to give Lashley's requested mitigating circumstance instruction on an empty record.

Second, the court mistakenly holds "*Lockett* requires the state ... to come forward with evidence [showing Lashley's criminal history], or else the [trial] court must tell the jury it may consider the requested mitigating circumstance." *Ante* at 1502. The Supreme Court rejected this position in *Walton,* holding there is no "constitutional imperative ... that would require the [sentencer] to consider the mitigating circumstances claimed by a defendant unless the State negate[s] them." 110 S.Ct. at 3055. In Lashley's case, the State had neither a burden nor a reason to introduce evidence refuting a mitigating circumstance about which the record was otherwise silent.

Finally, the court mistakenly concludes *Lockett* obligated the state trial judge to give Lashley's requested mitigating circumstance instruction even though the record did not contain a shred of evidence to support it. Essentially, the court holds that a lack of evidence is itself evidence. *Ante* at 1501. I say this based on the court's reasoning that although "[t]he evidence before the jury ... *presented a blank slate* [, a]s far as the jury was concerned, Lashley had no significant history

of prior criminal activity and, therefore, he was entitled to have the jury consider that *fact* as a mitigating circumstance." *Id.* (emphasis mine). Simply stated, the court's position is at odds with *Lockett, Eddings, Penry,* and *Walton.* These cases make clear that before a capital defendant is entitled to have the jury consider a mitigating circumstance, the defendant must first present evidence supporting that circumstance. Indeed, *Walton* leaves no doubt the constitution permits states to insist capital defendants establish "by a preponderance of the evidence, the existence of mitigating circumstances sufficiently substantial to call for leniency." 110 S.Ct. at 3055.

Unlike the defendant in *Walton,* however, Lashley did not have to prove his mitigating circumstances by a preponderance of the evidence. Under Missouri law, Lashley was merely required to introduce some evidence in support of the mitigating circumstance instruction he requested. *See State v. Lashley,* 667 S.W.2d 712, 715–16 (Mo.), *cert. denied,* 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984). The Missouri Supreme Court expressly held Lashley was not entitled to his requested instruction because he chose to leave the record completely silent on the issue of his past criminal activity. *Id.* Thus, the state trial judge properly denied Lashley's requested instruction, and this did not impinge on Lashley's constitutional rights. Although *Lockett* and *Penry* guarantee capital defendants the right to offer mitigating evidence and the right to submit jury instructions giving effect to that evidence, *Lockett* does not require a state to abandon its rules of evidence. *See Walton,* 110 S.Ct. at 3055. Thus, given these circumstances Lashley cannot complain about the trial judge's refusal to give an instruction that had no foundation whatsoever in the record.

In my view, the court unnecessarily reverses Lashley's death sentence based on the state trial judge's proper refusal to give a requested jury instruction that has no support in the record. To do so, the court misreads *Lockett,* fails to follow *Wal-*

*ton*, overlooks *Penry* and *Hopper*, and rejects Missouri state law. Because the court ignores this controlling authority, I dissent.

### Concurrence in Part G

In part G and footnote one, the court's opinion combines two distinct contentions Lashley raises on appeal about his attorney's failure to introduce evidence in support of his requested mitigating circumstance instruction. First, Lashley contends he received ineffective assistance of counsel because his trial attorney failed to introduce mitigating evidence in support of his requested instruction. Judge Arnold, Judge Waters, and I agree the district court properly rejected this contention, and further explanation of the court's position is unnecessary. *Ante* at 1500 (main text of part G). In his second contention, Lashley claims the state trial court, in violation of *Lockett*, precluded his attorney from introducing supporting mitigating evidence. Judge Arnold agrees with Lashley and would reverse based on *Lockett*. *See ante* at 1500 n. 1. Judge Waters and I, however, disagree with Lashley's contention. *Id.* Because footnote one of the court's opinion only briefly states our position, I write separately to explain our holding.

In his *Lockett* contention, Lashley claims he was denied due process because the state trial judge prevented his attorney from introducing evidence to support his request for the mitigating circumstance instruction. According to Lashley, the trial judge erroneously ruled the State could use evidence of his juvenile record to rebut his criminal-history witnesses. *See* Mo.Rev. Stat. § 211.271 (1978) (statute governing use of juvenile records). A careful review of the record reveals Lashley's claim is unfounded.

During a pretrial conference preceding the penalty phase of Lashley's trial, the State broached the subject of Lashley's juvenile record and its admissibility under state law. (T. 709). Lashley's attorney made her trial strategy clear to the trial judge and the prosecutor when she re-

sponded, "I am not going to ask [Lashley's witnesses] about [Lashley's] juvenile record and I am ... making a motion in limine that the State be prohibited from introducing ... or eliciting evidence of ... Lashley's juvenile record." (T. 711). The prosecutor replied he did not intend to introduce evidence of Lashley's past criminal activities unless defense witnesses testified Lashley had no criminal history. (T. 711–12).

In presenting her motion and during the ensuing dialogue with the prosecutor and the trial judge, Lashley's attorney repeatedly emphasized she was not going to ask her witnesses any questions about Lashley's juvenile record or his criminal activity. (T. 712). Indeed, with prepared questions in hand, Lashley's attorney told the trial court she would ask two defense witnesses how they knew Lashley, how Lashley acted around them, whether they loved Lashley, and whether they wanted the jury to spare Lashley's life. (T. 712, 714–15). The trial judge asked Lashley's attorney whether she intended to ask these witnesses about Lashley's behavior, and the attorney responded, "I didn't plan to ask that question." (T. 713–14). The prosecutor had no quarrel with the proposed questions, and he assured the judge and Lashley's attorney the State would not delve into Lashley's past criminal activities. With this understanding between counsel, the trial judge never ruled on Lashley's motion in limine.

It seems to me Judge Arnold runs against the grain of the record when he states the trial judge "told counsel that if she insisted on offering evidence that Lashley had no criminal record, [the judge] would permit the state to counter this evidence by showing that [Lashley] had committed juvenile offenses." *Ante* at 1500 n. 1. Lashley's attorney stated no less than three times on the record that she was not going to ask her witnesses about Lashley's past criminal behavior. (T. 711–12). In response, the trial judge gently urged Lashley's attorney to present mitigating evidence by telling her the state had a reasonable position that Lashley was not entitled to a mitigating circumstance in-

struction without first presenting supporting evidence. (T. 712). Then, in the midst of Lashley's attorney's fourth declaration that she was not going to present any evidence of Lashley's past criminal history, the trial judge observed, "If you are going to try to prove by these witnesses that this is [Lashley's] first problem with the law, when in fact it is not, I have ... problems with your proposition [that the state could not rebut this evidence]." (T. 714). In response, Lashley's attorney reiterated the prepared questions she intended to ask her witnesses—all of which were unrelated to Lashley's criminal history—and the trial judge told her "no problem." (T. 715). In sum, the dialogue between counsel and the trial judge lends no support to Judge Arnold's conclusion that Lashley's attorney "made a reasonable effort to introduce [mitigating] evidence but was prevented from doing so by an incorrect ruling of the state trial [judge]." *Ante* at 1500 n. 1.

Contrary to Lashley's argument that the trial judge interfered with his presentation of criminal history evidence, the Missouri Supreme Court found "it was defense counsel's position that the absence of any criminal history being adduced warranted the [mitigating circumstance] instruction." *State v. Lashley,* 667 S.W.2d at 715; (T. 725). Indeed, Lashley's attorney repeatedly explained to the trial judge she was "not going to ask [her witnesses] whether or not [Lashley] ha[s] a record." (T. 725). Although the trial judge believed Lashley's attorney should present mitigating evidence based on Lashley's past criminal history, it was the attorney's strategy to forgo the introduction of any supporting evidence because she believed Lashley was entitled to the requested instruction regardless whether she presented supporting evidence. *State v. Lashley,* 667 S.W.2d at 715.

Thus, the trial judge in no way precluded Lashley's attorney from introducing mitigating circumstance evidence shedding light on the extent of Lashley's criminal history. In any event, the cause for the attorney's concern—the State's introduction of Lashley's criminal record as a juvenile—never materialized at trial. Lashley's attorney asked each and every question she anticipated asking; the State never broached the subject of Lashley's past criminal activities; and the trial judge did not interfere with the attorney's trial strategy. (T. 746–55).

Lashley's attorney may have feared that if she offered evidence Lashley had no significant history of criminal activity, the State might be permitted to respond with unfavorable evidence of Lashley's criminal behavior as a juvenile—evidence she deemed inadmissable under state law. Nevertheless, this did not relieve her burden to present Lashley's mitigating evidence in the first place. Simply put, Lashley's attorney should have offered testimony about Lashley's behavioral history and then objected to the State's cross-examination of her witnesses if it exceeded its permissible scope under Missouri law. *Byrd v. Armontrout,* 880 F.2d 1, 11 (8th Cir.1989), *cert. denied,* 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990). Had Lashley and his attorney followed this course, the record presumably would have supported Lashley's requested instruction, and if the State had offered evidence of Lashley's juvenile record or his underlying criminal behavior in a manner that violated state law, that error would have been preserved for review. Lashley and his attorney, however, decided against introducing any evidence showing Lashley did not have a significant criminal history. Thus, Judge Waters and I agree Lashley's claim that the trial judge prevented his attorney from establishing a mitigating circumstance in violation of *Lockett* must be rejected.

### Conclusion

Although I agree this court must reject Lashley's contentions attacking his capital murder conviction, I disagree with the court's decision to overturn Lashley's death sentence. I would thus affirm the district court's denial of Lashley's application for a writ of habeas corpus.