In re Interest of Ronald C———, a child under 17 years of age.

No. 7689.

Springfield Court of Appeals.

Missouri.

June 9, 1958.

William C. Myers, Jr., Pros. Atty., and Robert Warden, Asst. Pros. Atty., Joplin, for the State.

Max Patten, Joplin, for the child.

STONE, Presiding Judge.

In this statutory proceeding under our new Juvenile Act [Sections 211.011 to 211.-431, 1957 cumulative pocket part to 12 V.A.M.S.; Laws of 1957, pp. 642–659], Ronald C———, now eight years of age, appeals from the judgment of the juvenile court entered on September 17, 1957, which found that Ronald was within the applicable provisions of Section 211.031 and committed him to the custody of Big Brothers, Inc., until further order of the court. Section 211.181.[1] Ronald is one of four minor children born of the marriage of Dillard and Irene on June 6, 1940. Although few details are supplied, the transcript on appeal adequately demonstrates that the marital life of the parents was turbulent and tempestuous, and that it was punctuated with numerous separations. A major, if not the principal, cause of the parents' difficulties was Dillard's alcoholic addiction—an addiction which made Dillard well-known to the police, resulted (as Irene said) in his use of abusive language and his threatening both her and his mother, and culminated within the month prior to the hearing in such degrading and shameful conduct by Dillard in the home of his own mother that she was driven to the humiliating experience of calling the police because, although Dillard, her only child, "didn't

1. Unless otherwise specifically stated, all statutory references are to the sections of the new Juvenile Act, as numbered in the 1957 cumulative supplement to the Missouri Revised Statutes and in the 1957 cumulative pocket part to 12 V.A. M.S.

strike me or hit me or anything, * he acted like he might."

Both Charles (the oldest of the four children born to Dillard and Irene) and Ronald had lived in the home of their paternal grandmother, Mrs. C——, for several years prior to 1957. Charles, who had been adopted by Mrs. C—— some four or five years previously, was committed to the Boonville Training School for Boys during August, 1957. He was then sixteen years of age. One of the juvenile officers said that Charles had "admitted some burglaries" and that Dillard, his father, had admitted "having concealed some loot that Charles had obtained through a burglary." Dillard had lived "off and on" at the home of his mother, Mrs. C——, "during the whole seventeen years" of his marriage with Irene; and, after Dillard and Irene separated in March, 1957, when some (unexplained) "trouble came up over" Patricia (Ronald's older sister whose exact age is not given), Dillard had lived in his mother's home until the night of August 18, 1957, when he took Patricia from Big Brothers, Inc., and disappeared. Neither Dillard nor Patricia had been found by the authorities at the time of the hearing as to Ronald on September 10, 1957.

In March, 1955, an information had been filed in the juvenile court charging that Patricia, Ronald (then five years old) and Linda (then nine months old) were neglected children. Following conferences and hearings, an order was made "by consent of all the parties" leaving Patricia and Linda in the custody of their mother, Irene, "under the supervision of the child welfare office," and leaving Ronald in the custody of his grandmother, Mrs. C——, with whom he had been living "since he was a little baby two or three months old." Although there was no formal order or finding in 1955 that Ronald was a "neglected child" within the then statutory definition of that term [Section 211.010(2), RSMo 1949, 12 V.A.M.S.], there were "subsequent hearings concerning each of the children." The nature and extent of such supervision (if any) as was exercised with respect to Ron-

ald are not disclosed in the record here presented, but Mrs. C—— readily admitted at the hearing that, while the juvenile judge had been "working with" her and Charles, she had been "warned and required to keep Dillard away from (her) home" because he "was a bad influence" on the children.

The petition filed in September, 1957, charged, and the court found, that Ronald was "without proper care and custody" and that "the behavior, environment and associations of said child are injurious to his welfare." See Section 211.031. Although the juvenile officers thought and the court also found that Mrs. C—— "fails to properly discipline" Ronald and that she "nags and complains at said child constantly," the record taken in its entirety persuasively demonstrates that the primary and principal reason for the court's judgment was that, as the court expressly found, Mrs. C—— "permits said child to associate with persons of ill repute, to-wit, Dillard C——." For, immediately after overruling Ronald's motion for new trial on October 16, 1957, the court modified the original judgment of September 17, 1957, by releasing Ronald from Big Brothers, Inc., and "placing him in the care and custody of his grandmother, Mrs. C——, under the supervision of the Department of Welfare and upon condition that he not be permitted to associate with Dillard C——."

■ The spirited defense of counsel at the hearing obviously was motivated by Mrs. C—— ("heartbroken and what mother wouldn't be"), torn between a mother's fierce loyalty inspired by unfathomable love for an unworthy son whom she nevertheless defended as having "tried to do better" and a grandmother's unswerving devotion to a winsome child whose care had become "my life." But, without joining in the cold condemnation of Mrs. C—— freely expressed by the officers and obviously engendered by the failure of Mrs. C—— to keep the promise extracted of her to become an informer against her own son after his disappearance with Patricia in August, 1957, it is nevertheless convincingly clear

to us that Dillard had been indeed "a bad influence" on his children, that Mrs. C—— had failed to heed the sound admonition that he be not allowed to associate with the children in her home, and that Ronald's association with Dillard necessarily would have been injurious to Ronald's welfare. So, we are constrained to conclude that the conscientious juvenile judge did not err in his judgment that Ronald was within the applicable provisions of Section 211.031.

In determining this appeal on its merits, we have passed preliminary questions which, but for the compelling consideration that the welfare of an innocent child is involved and the subsidiary consideration that this is a case of first impression under our new Juvenile Act, might have prompted us to dismiss this appeal. In a juvenile proceeding (as in other cases), the right of appeal is purely statutory and at least substantial compliance with the applicable statute is required. State v. Jahnke, 221 Mo.App. 366, 273 S.W. 155. Section 211.261 provides that "(a)n appeal shall be allowed to the child from any final judgment, order or decree made under the provisions of this chapter and may be taken on the part of the child by its parent, guardian, legal custodian, spouse, relative or next friend." Similar language in a predecessor statute[2] was paraphrased in State ex rel. Killoran v. Calhoun, 201 Mo.App. 374, 379, 211 S.W. 109, 110, as meaning "that an appeal may be allowed to the child * * * by a guardian, by either parent, by previous custodian, or by any person within the fourth degree of kindred of the child." The Juvenile Act being a complete law within itself dealing with

minors under the age of seventeen years,[3] we think that Section 211.261 contemplates, and should be construed as requiring, that any appeal thereunder be taken on behalf of the child by some person standing in one of the specified relationships. That seems to have been the practice followed by the bar generally[4] and by Ronald's attorney in a prior appeal taken on behalf of other minors. State v. Hyman, Mo.App., 230 S. W.2d 504, 506. Of course, an eight-year old child, such as Ronald, is not sui juris and, in fact as well as in law, would be incapable of reaching an informed and logical conclusion as to whether he needed legal counsel or, if so, as to whom he should retain or, in the event of a hearing, as to whether he had been aggrieved by the judgment and should appeal. In the instant case, Ronald is the sole appellant and the notice of appeal is signed by the "attorney for appellant."

The notice of appeal reads: "Notice is hereby given that Ronald C—— above-named, hereby *appeallant* (sic) to the Springfield Court of *Missouri* from the judgment and order overruling Motion for New Trial entered in this action on the September *19, 1957* and overruling Motion on Oct 16, 1957." The judgment in this proceeding was entered on September *17, 1957*; and, since the appellate courts have pointed out from time to time over a period of twelve years that an appeal such as this is properly taken from the judgment and not from the order overruling the motion for new trial, "it seems to us that all members of the bar should now be prepared to take appeals in compliance with the statute, and cease to be content with *attempts* to do so in good faith."

2. Section 211.170, RSMo 1949, 12 V.A. M.S., provided in part that "(a)n appeal shall be allowed to the child from any final judgment of delinquency or dependency * * * and may be demanded on the part of the child by its guardian, by either parent or by its previous custodian, or by any person within the fourth degree of kindred of such child." See also Section 211.410, RSMo 1949.

3. State v. Harold, 364 Mo. 1052, 1055, 271 S.W.2d 527, 529; State v. Heath, 352 Mo. 1147, 1151, 181 S.W.2d 517, 519(4); State ex rel. Shartel v. Trimble, 333 Mo. 888, 891, 63 S.W.2d 37, 38; State ex rel. White v. Swink, 241 Mo.App. 1048, 1055, 256 S.W.2d 825, 831.

4. See In re Campbell, 323 Mo. 757, 760, 761, 19 S.W.2d 752, 753, 754; State v. Couch, Mo.App., 294 S.W.2d 636, 638, Idem., 285 S.W.2d 42, 45; Morrison v. State, Mo.App., 252 S.W.2d 97, 98; State v. Woerner, Mo.App., 294 S.W. 423.

Terrell v. Missouri-Kansas-Texas R. Co., Mo., 303 S.W.2d 641, 649. But, overlooking the egregious imperfections manifest on the face of this notice of appeal, we hesitantly and reluctantly treat it as a bona fide attempt to comply with the governing statute [compare State v. Amsden, Mo., 299 S.W.2d 498, 501(5)], appending the cautionary warning that this is not to be regarded as a precedent.

■ The case comes to us on the transcript without any brief on behalf of the state or the child. We do not know whether counsel regarded this proceeding as a *criminal* case and thought, by the simple expedient of filing a transcript, to cast upon us the onus of examining pursuant to Supreme Court Rule 28.02 what formerly was termed "the record proper" [State v. Rutledge, Mo., 267 S.W.2d 625(1); State v. King, 365 Mo. 48, 56, 275 S.W.2d 310, 315] and such assignments of error in the motion for new trial as might be sufficiently specific to comply with Supreme Court Rule 27.20. State v. Mace, Mo., 295 S.W.2d 99, 101. See also State v. Johnson, Mo., 286 S.W.2d 787, 790; Section 547.270, RSMo 1949, 39 V.A.M.S. That there may be no misunderstanding on this subject we add these comments. The purpose of the Juvenile Act is not to convict of criminal offenses but is to safeguard and reform erring children and to protect and provide for neglected children.[5] Indubitably, a juvenile proceeding is not a criminal case;[6] and, although it may not be a " 'civil case' within the meaning of the term as used in the constitutional appellate jurisdictional sense" [State v. Harold, 364 Mo. 1052, 1056, 271 S.W.2d 527, 530], we think that it must be regarded as partaking of the character of a "civil case" insofar as appellate procedure and review are concerned.[7] Compare Dansker v. Dansker, Mo.App., 279 S.W.2d 205, 209(4), an appeal from a judgment of the juvenile court transferring the custody of previously adjudged neglected children.

■ Since the order of modification on October 16, 1957, returned Ronald to the custody of his grandmother, Mrs. C——— (who obviously was the moving spirit in the defense), the only portion of the *original* judgment of September 17, 1957 (from which the appeal was sought), remaining in force and effect, is the holding that Ronald was within the applicable provisions of Section 211.031. Having concluded upon careful review of the evidence that the juvenile judge did not err in so finding, we have neither obligation nor inclination to seine, *sua sponte,* through the assignments in the motion for new trial in a laborious and unrewarding effort to net some diminutive error. Even such important matters as the welfare and custody of children "must be considered in the orderly process of judicial procedure." In re Wakefield, (banc) 365 Mo. 415, 424, 283 S.W.2d 467, 473.

The judgment of September 17, 1957, as modified on October 16, 1957, is affirmed.

McDOWELL and RUARK, JJ., concur.

5. Sections 211.011, 211.271 and 211.131 (1); Weinstein, *The Juvenile Court Concept in Missouri,* 1957, W.L.Q. 17, 39. Consult State v. Harold, supra, 271 S.W. 2d loc. cit. 529(7), 530(10); Idem., Mo. App., 281 S.W.2d 603, 606(1); State ex rel. Shartel v. Trimble, supra, 63 S.W.2d loc. cit. 38–39; State ex rel. Matacia v. Buckner, 300 Mo. 359, 364–365, 254 S.W. 179, 180–181(2–5).

6. See again authorities cited in footnote 5, supra; and, note the prescribed caption on a petition in a juvenile proceeding, to-wit, "In the interest of ———, a child under seventeen years of age." Section 211.091.

7. Section 211.171(6) provides that "(t)he practice and procedure customary in proceedings in equity shall govern all proceedings in the juvenile court."