**STATE of Missouri, Respondent,**

v.

**Frederick LASHLEY, Appellant.**

No. 63994.

Supreme Court of Missouri,
En Banc.

March 20, 1984.
Rehearing Denied April 16, 1984.

Henry Robertson, Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., John E. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

BILLINGS, Judge.

Defendant Frederick Lashley, 17, was convicted of the capital murder of his physically handicapped 55-year-old cousin and foster mother, Janie Tracy, while robbing her of $15. The punishment prescribed by the jury and approved by the trial court is death. We affirm.

The victim lived alone in a downstairs apartment in the City of St. Louis. She had heart trouble, diabetes and a neuromuscular problem that caused her to limp and required her to use a walking cane. She had difficulty walking since she had undergone a brain operation a number of years ago. The operation had resulted in the removal of a portion of her skull on the left side of her head. Defendant had lived with and been cared for by Miss Tracy (and her mother) from the time he was two years of age until he was sixteen years old. He had been present on occasions when there had been discussions concerning the soft spot on Miss Tracy's head.

On the night of April 9, 1981, Miss Tracy was visiting her sister, Mrs. Williams, who lived several blocks from the Tracy apartment. Sometime before 8:30 p.m., defendant entered the apartment by climbing through the top of a window on the rear porch. He unscrewed the light bulb in the front room so that the light would not come on when the switch was turned on. His admitted purpose was to ambush Miss Tracy and take her money when she returned home. Defendant, armed with a cast iron skillet (and the jury could reasonably find he also had a butcher knife having a seven and one-half inch blade), waited in the dark in the bedroom adjacent to the front room.

Miss Tracy left her sister's home between 8:00 and 8:30 p.m., driving her car. In his confessions to the police, one of which was videotaped, defendant stated

that when Miss Tracy entered the front door of the apartment she attempted to turn on the light. When the light did not come on she started into the room where defendant was waiting. As she reached for the light switch he struck her in the head with the iron skillet, breaking it into two pieces. He said she fell and began screaming and he put his hand over her mouth. When asked where the knife came from the defendant stated:

> Off the floor. It was on—well, really it was on the floor. That's—I mean, you know, I just see the knife and then I grabbed it, you know. And then she had it in her hand. We both had it. And then I finally got it—got it back and then that's when I stuck her with it.

Defendant took $15 and car keys from Miss Tracy's purse, locked the front door on the way out of the apartment, and drove off in the victim's automobile. He was apprehended while driving the stolen vehicle shortly after midnight.

An upstairs neighbor of Miss Tracy, Mrs. Ali, 81, had heard screams followed by something which sounded "like a fall" from the downstairs apartment. She telephoned the Tracy apartment and when she did not get an answer, called Mrs. Williams to come over and investigate. Mrs. Williams and her husband went to her sister's apartment shortly after 8:30 p.m. Mrs. Williams noticed her sister's car was not parked outside. She had a key to the apartment and upon entering it, saw her sister on the floor of the bedroom, bleeding about the head. She also saw a butcher knife near Miss Tracy and a broken skillet on the bedroom floor. Police and medical assistance were immediately summoned.

Hospital records showed Miss Tracy was comatose and brain dead when she arrived at the hospital. She had a cut on her head above the right ear, "defense" knife cuts on her fingers, and a one-inch incision above her left ear where the knife entered her skull through the soft spot and penetrated her brain. This stab wound caused her death approximately 48 hours later.

■ Defendant did not testify at trial but his written and videotaped confessions were introduced by the State.[1] In both he admitted striking the defenseless woman with the skillet with sufficient force to knock her down and then plunged the butcher knife into her head. Consequently, his claimed error in the admission into evidence of a small hammer that was found by an evidence technician near a piece of the iron skillet need not long detain us. A photograph showing the hammer and piece of skillet had already been received in evidence—without objection. As a physical object found at or near the scene of the crime, and of a type that could have been used to deliver a felling blow, we cannot say the hammer had no relevancy or probative value. *See State v. Neal*, 591 S.W.2d 178, 180 (Mo.App.1979). Defendant does not demonstrate how or in what manner he was prejudiced by the hammer being received in evidence and we note that the only mention of the hammer in closing arguments was made by defense counsel. In any event, it is beyond dispute that the butcher knife wielded by the defendant was the death weapon. The point is denied.

■ Defendant next launches a broadside attack on the "Witherspooning" [*Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1170, 20 L.Ed.2d 776 (1968)] of the jury panel in the guilt stage of the trial and further contends that because of the prejudice resulting from such he was entitled to a different jury for the penalty phase of the trial. We considered and rejected identical contentions in *State v. Guinan*, 665 S.W.2d 325 (Mo. banc 1984). The point is denied.

At the punishment phase of trial, the court gave Instruction No. 20 to the jury for their determination of whether the State proved, beyond a reasonable doubt,

---

**1.** There was substantial evidence that defendant was fully and completely *Miranda*-ized and that his confessions met constitutional standards.

that the defendant murdered Janie Tracy for the purpose of receiving money or any other thing of monetary value. The jury initially returned and presented the court with a verdict form which stated "there was no evidence to disprove he entered the house for the reason of obtaining money". The experienced trial judge told the jury the verdict was not in the proper form and requested them to retire and read the instructions. Defense counsel, although agreeing "the verdict is improper", objected to the court's returning the jury for further deliberations, and moved for a mistrial, which was overruled. The jury thereafter returned the verdict form accepted by the trial court in this case.

Defendant first argues that the trial court's failure to accept the original punishment verdict as an acquittal of the statutory aggravating circumstance was erroneous because the original punishment verdict form returned indicated that the jury had shifted the burden of proof and constituted a finding against the State as to the aggravating circumstance submitted. Next, defendant argues the improper wording of the aggravating circumstance verdict form showed that the jury did not find beyond a reasonable doubt the aggravating circumstance submitted and, therefore, the death penalty cannot be assessed because the jury's finding as to the aggravating circumstance is controlling over its intention to assess the death penalty. Finally, defendant argues that the trial court erred in telling the jury that the verdict was in improper form because this amounted to a directed verdict for the State and a comment on the evidence.

■ The law is clear that when a jury returns a verdict in improper form, it is the *duty* of the trial court to refuse to accept the same and require further deliberations until a verdict in proper form is returned. *State v. Helm,* 624 S.W.2d 513, 519 (Mo. App.1981). The jury's verdict is not binding until it is accepted by the court and the jury discharged. *State v. Hurley,* 602 S.W.2d 838, 839–40 (Mo.App.1980). Consequently, there is no merit in defendant's

claim that he was "acquitted" of the statutory aggravating circumstance by the jury's improperly worded verdict form. Further, the return of a verdict in improper form and the refusal by the trial court to accept it is not a situation which places a defendant in double jeopardy. *State v. Jones,* 583 S.W.2d 561, 562 (Mo.App.1979); *State v. Summers,* 501 S.W.2d 548, 550–51 (Mo.App.1973). The verdict form *accepted* by the court found the statutory aggravating circumstance that authorized the imposition of the ultimate penalty.

■ The trial judge in this case not only correctly directed the jury to further deliberate and return a verdict in proper form, but was careful to not prejudice the defendant in any manner in so doing. The court merely told the jury that the verdict was not in proper form, and asked them to retire and read the instructions. The court in no manner indicated to the jury why the verdict was not in proper form, and clearly did not indicate his desires as to the form that they should return. The court could not have handled the situation in a more neutral manner. The point is denied.

■ Defendant contends the court committed reversible error in refusing to give his tendered instruction on mitigating circumstances which included the mitigating circumstance of defendant having no significant history of prior criminal activities.

At the instruction conference defense counsel and the prosecutor discussed the admissibility of defendant's juvenile record. As a result of defendant's counsel stating she was not going to delve into her client's juvenile record and the prosecutor's stating he did not intend to do so unless defense witnesses stated defendant had no prior criminal history, it was defense counsel's position that the absence of any criminal history being adduced warranted the instruction. Defendant's position is refuted by the italized language contained in MAI-CR 2d 15.44 which specifically states statutory mitigating circumstances are to be supported by the evidence. We so held in *State v. Battle,* 661 S.W.2d 487, 492 (Mo. banc 1983). There being no evidence to

support the statutory mitigating circumstance, the trial court correctly refused defendant's proffered instruction.

Defendant's final point is that the sentence of death is excessive and disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

■ Our review of the imposition of the death penalty is mandated by § 565.014, RSMo 1978. Such a review includes the entire record and transcript and the report prepared by the trial judge. *State v. Battle*, 661 S.W.2d at 493.

■ Defendant does not suggest nor do we find that the ultimate penalty resulted from passion, prejudice, or any other arbitrary factor. There is substantial evidence to support the jury's finding of the statutory aggravating circumstance beyond a reasonable doubt. The facts and circumstances clearly demonstrate that the defendant deliberately and with premeditation brutally took the life of the physically infirm woman, who for many years had cared for and reared him, in order to rob her. He unlawfully entered her home knowing she was not present and laid in wait for her, after setting the stage by unscrewing the front room light. He possessed a cast iron skillet he had found on the kitchen stove, and, inferentially, a butcher knife from the kitchen. When she entered the darkened bedroom he struck her with sufficient force to break the iron skillet into two pieces. He then plunged the knife into the defective portion of her skull, the seven and one-half inch blade penetrating her brain. The savage thrust of the knife resulted in rendering her brain dead by the time she was received in the emergency room of the hospital. Defendant then took the victim's money and car keys and drove away in her car. He and a friend got something to "drink" with two dollars of his ill-gotten gains and were joyriding in the stolen vehicle when apprehended by officers. By his deliberate and premeditated acts, the defendant demonstrated a callous and marked indifference to human life.

■ As we held in *State v. Bolder*, 635 S.W.2d 673 (Mo. banc 1982), *cert. denied*, — U.S. ——, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983), and reaffirmed in *Battle*, death-waived cases are not relevant in our proportionality review and defendant's citation of such cases do not aid him. In cases involving the statutory aggravating circumstance of murder for the purpose of receiving money or any other thing of monetary value, none approach the classic lying in wait of the defendant in this case to kill a helpless and crippled middle-aged woman for her money. *See State v. McDonald*, 661 S.W.2d 497 (Mo. banc 1983); *State v. Gilmore*, 661 S.W.2d 519 (Mo. banc 1983).

During the sentencing phase of defendant's trial and in brief and oral argument to this Court, the age of the defendant at the time of the murder was heavily stressed as a mitigating factor with the obvious hope that the lesser penalty for capital murder would be forthcoming. The jury resolved the matter against the defendant. The trial judge, in his report to this Court said:

> Under the facts of the case considered in the light of the brutal aspects contained therein, the sentence is an appropriate one even though the defendant is a young person.

Defendant was 17 years and one month old at the time of the killing. He is now 20 years old. He had completed the 12th grade in school and is considered average in intelligence. From age 13 to 16 he was committed by juvenile authorities to various institutions on several occasions for violating the law. While in custody for the present offense he told officers he had committed several felonies after attaining adult status.

What we said in *State v. Battle, supra,* at 494, on the matter of the death penalty and the defendant's age, is equally applicable in this case.

The judgment is affirmed.

RENDLEN, C.J., and WELLIVER, HIGGINS, GUNN and DONNELLY, JJ., concur.

BLACKMAR, J., concurs in part and dissents in part in separate opinion filed.

BLACKMAR, Judge, concurring in part and dissenting in part.

I am uneasy with the suggestion in the principal opinion that the defendant has the burden of introducing evidence in support of the mitigating circumstance set out in § 565.012.3.(1), RSMo Cum.Supp. 1982, as follows:

> The defendant had no significant history of prior criminal activity.

There should be a rebuttable presumption that a defendant has no such significant history. It is established law, furthermore, that a juvenile record does not constitute "criminal activity." Section 211.271, RSMo 1978. *See State ex rel. R.L.W. v. Billings,* 451 S.W.2d 125, 127 (Mo. banc 1970); *State ex rel. Whittaker v. Webber,* 605 S.W.2d 179, 182–83 (Mo.App.1980); *In re C* ——, 314 S.W.2d 756, 760 (Mo.App. 1958).

Section 565.012.3.(1), however, refers to "criminal activity" and not to "convictions." The state should be able to show criminal activity which has not ripened into conviction, subject to the trial court's discretion to control the scope of the trial to keep it from getting too far out of bounds. There are indications in the record before us of other felonies committed by the defendant while an adult, but these may not have been offered into evidence during the trial. Because of the Court's vote I have not further explored the possibility that a remand for the taking of further evidence might show that the trial court properly refused to instruct on absence of criminal conduct.

I adhere to the views expressed in *State v. Battle,* 661 S.W.2d 487, 495 (Mo. banc 1983) as to the imposition of a death sentence on a very young offender, and cannot add to these views except to say that Battle's offense was much more gruesome.

The principal opinion refers to deliberateness as demonstrated by "lying in wait." The case is not so aggravated as *State v. McIlvoy,* 629 S.W.2d 333 (Mo. banc 1982), in which the defendant stalked the victim on two occasions and then shot him repeatedly, in order to collect a promised $1,000. I believe that this defendant's extreme youth is a circumstance comparable to McIlvoy's demonstrated susceptibility to influence, as shown by expensive psychiatric testimony. I reiterate my observations in *State v. McDonald,* 661 S.W.2d 497, 518 (Mo. banc 1983), as to the reluctance of juries to impose death sentences when the sole statutory aggravating circumstance is robbery. *State v. Gilmore,* 661 S.W.2d 519 (Mo. banc 1983) is not at all comparable to this case.

It appears that I am out of step with the majority of the Court in sentence review under § 565.014, RSMo 1978. I believe that, under that section, we are obliged to exercise independent judgment, rather than simply determining whether the jury's recommendation is supported by the record. As in *McDonald* and *Battle,* I would set aside the death sentence in this case, but would affirm the conviction.