**STATE of Missouri, Respondent,**

v.

**Brandon S. HUTCHISON, Appellant.**

**No. 79453.**

Supreme Court of Missouri,
En Banc.

Nov. 25, 1997.

Rehearing Denied Dec. 23, 1997.

J. Christopher Spangler, Sedalia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen King Mitchell, Asst. Atty. Gen., Jefferson City, for Respondent.

PRICE, Judge.

A jury convicted Brandon Hutchison of first degree murder and recommended the death sentence. The trial court entered judgment for the same. This Court has jurisdiction. Mo. Const. art. V. sec. 3. We affirm the judgment.

## I. Facts

We review the facts in the light most favorable to the verdict. *State v. Shurn,* 866 S.W.2d 447, 455 (Mo. banc 1993), *cert. denied,* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).

On December 31, 1995, Freddie Lopez and his wife, Kerry Lopez, threw a small New Year's Eve party in the garage adjacent to their house. Ronald and Brian Yates arrived at the party shortly after midnight. They were looking for their brother, Tim Yates, who had already left. Freddie Lopez invited them to stay for a few beers.

During the party several of the guests became intoxicated, including appellant, Brandon Hutchison. Freddie Lopez and Ronald Yates shared a line of methamphetamine. Hutchison caused a minor disturbance when he punched another guest, Jeremy Andrews, for no apparent reason. Andrews also observed Hutchison make shooting motions with his hand towards the Yates brothers.

At about 4:00 a.m., Freddie and Kerry Lopez went into the house to continue an argument that they had started in the garage about how much alcohol Kerry was drinking. Several of the party-goers went home, leaving only Hutchison, Michael Salazar, and Ronald and Brian Yates in the garage.

About twenty minutes later, Hutchison ran into the house and pounded on the Lopez's bedroom door, saying that "something bad had happened in the shop." Salazar called for Freddie Lopez from the porch. When Lopez came out, Salazar was holding a .25 caliber revolver. He told Lopez that he had shot someone. Lopez entered the garage and saw both Yates brothers lying on the floor. Salazar told Lopez that one of the brothers had tried to stab him.

Autopsies of the brothers showed that they had been shot at point blank range with a .25 caliber gun. The bullet that hit Ronald Yates lodged in his spinal cord, paralyzing him from the waist down. Brian Yates sustained a relatively minor bullet wound to the chest and a more serious one to the stomach. Medical evidence established that both brothers were still alive, however, when Lopez

found them on the garage floor. Lopez testified that he saw Ronald Yates gasp.

Hutchison insisted that nobody call an ambulance and that Ronald Yates was already dead. He then suggested that they remove Ronald and Brian Yates from the garage in Lopez's white Honda Accord. Hutchison and Salazar put Ronald Yates in the trunk first, then Hutchison put Brian Yates in the trunk on top of Ronald after dragging him by his shoulders, dropping him on the floor, and kicking him in the upper body. Meanwhile, Salazar went into the house to fetch a drug scale and a .22 caliber handgun, which he also put in the Honda. The three men took off in the car with Hutchison driving.

After driving ten to fifteen minutes, Hutchison pulled over on the side of a dirt road. He and Salazar got out and walked to the back of the car. Lopez testified that as Hutchison climbed out of the car, he held the .22 caliber pistol and said, "we got to kill them, we got to kill them." Lopez heard several gunshots and then Hutchison and Salazar got back into the car. Lopez testified that Hutchison was still clutching the gun when he returned to his seat.

They proceeded to a nearby creek bed where Lopez dropped bullet casings in the water and Hutchison buried both the .25 and the .22 caliber guns, which he had wrapped in his tee-shirt. Then they drove to the trailer home of a mutual friend, Troy Evans. Hutchison pounded on Evans' door until Evans let them inside. Evans' girlfriend, Frankie Young, noticed Lopez's white Honda parked in front of the trailer. Hutchison begged Evans for permission to take a shower because he had blood on one of his hands. Lopez and Salazar made several phone calls. One call was to a girlfriend of Salazar who lived in Yuma, Arizona.

The three men returned to the Lopez's house. Shortly thereafter, Kerry Lopez noticed a significant amount of blood on the Honda's back bumper. Hutchison and Salazar left in the Yates brothers' car and drove to a girlfriend's house. She gave them a ride to the Joplin bus station where they bought two tickets to Yuma, Arizona.

At around 8:00 a.m., Ronald and Brian Yates's dead bodies were found on the side of the road. Both had died of execution-style gunshot wounds to the head from .22 caliber bullets. Ronald Yates had sustained a shot in each eye and one to the back of the head, and Brian Yates had sustained one shot in the right eye and one in the right ear. The Yates brothers' hair and blood were found on a piece of carpet that was found with the bodies. Fiber analysis determined that the carpet came from the trunk of Lopez's car.

Hutchison and Salazar were apprehended several days later in California.

## II. Issues on Appeal and Standard of Review

Hutchison alleges seven points on appeal. Three of these points were preserved at trial for review on appeal: 1) that the trial court erred by excluding as hearsay a statement made by Michael Salazar to the police because the statement was properly admissible as a statement against penal interest; 2) that the trial court erred by permitting testimony that Hutchison stopped answering questions during interrogation and shouted obscenities because such testimony violated Hutchison's right to not have his silence used against him and was irrelevant and prejudicial; and 3) that the trial court abused its discretion by endorsing penalty phase witness John Galvan on the first day of trial because the lateness of the endorsement did not leave Hutchison adequate time to investigate and formulate a rebuttal theory.

Three of Hutchison's points on appeal were not preserved at trial: 1) that the trial court erred by permitting testimony that Hutchison hit a party guest on the morning of the murders because the testimony was inadmissible prior bad act evidence; 2) that the trial court erred by not ordering *sua sponte* a mistrial because of improper and prejudicial arguments in the state's opening statement; and 3) that the trial court erred in submitting penalty phase instructions to the jury that improperly allowed the jury to set Hutchison's punishment on the basis of the conduct of co-defendant Michael Salazar. Finally, Hutchison claims that we should reduce his death sentence to life in prison without parole pursuant to section 565.035, RSMo, because the jury was prejudiced, the state's case hinges on the circumstantial evidence

provided by the testimony of a co-defendant, and because Hutchison was only 21–years–old and had no history of significant criminal violations at the time of the murders.

■ With regard to trial court errors that have been preserved, we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Tokar,* 918 S.W.2d 753, 761 (Mo. banc 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996); *State v. Skillicorn,* 944 S.W.2d 877, 884 (Mo. banc 1997). Issues that were not preserved may be considered only if the court finds that manifest injustice or miscarriage of justice has resulted therefrom. Rule 30.20; *State v. Simmons,* 955 S.W.2d 729 (Mo. banc 1997); *State v. Roberts,* 948 S.W.2d 577, (Mo. banc 1997); *State v. Clemons,* 946 S.W.2d 206 (Mo. banc 1997), *cert. denied,* —— U.S. ——, —— S.Ct. ——, 118 S.Ct. 416, 139 L.Ed.2d 318; *State v. Brown,* 902 S.W.2d 278 (Mo. banc 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995).

### III.  Michael Salazar's Statement

■ In the first of his three preserved points on appeal, Hutchison alleges that the trial court should have permitted police investigator Mark Aleshire to read to the jury the portion of his police report in which he recorded Michael Salazar's confession to shooting the Yates brothers in the garage. Following his arrest, Salazar told Aleshire that he had shot Ronald Yates in the back and Brian Yates in the chest and stomach with the .25 caliber gun. He also told Aleshire that Hutchison shot the brothers in the head with the .22 caliber gun. Aleshire incorporated these statements, among others, in a police report he prepared. Counsel for Hutchison asked the trial court for permission to have Aleshire read Salazar's confession from the police report. The prosecutor objected on hearsay grounds. Alternatively, the prosecutor contended that if the court admitted Salazar's confession, then it should admit Salazar's entire statement, including Salazar's claim that Hutchison fired the gun that killed the brothers. The trial court ultimately determined that the proposed evidence was hearsay and could not come in under the "statements against penal inter-est" exception. Hutchison argues that the trial court should have overruled the state's hearsay objection to this evidence and admitted the disputed portions of Salazar's statement as statements against penal interest.

■ The exclusion of Salazar's confession was not error. Hearsay statements, or out-of-court statements used to prove the truth of the matter asserted, are generally inadmissible. *State v. Sutherland,* 939 S.W.2d 373, 376 (Mo. banc 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 186, —— L.Ed.2d —— (1997). *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), found a constitutionally-based hearsay exception in the due process clause. This exception applies to out-of-court statements that both exonerate the accused and are "originally made and subsequently offered at trial under circumstances providing considerable assurance of their reliability." *Id.* at 300, 93 S.Ct. at 1048. The Supreme Court recognized three such circumstances of reliability: 1) each confession is "in a very real sense self-incriminatory and unquestionably against interest"; 2) each statement was "spontaneously made to a close acquaintance shortly after the murder occurred"; and 3) the statements are "corroborated by other evidence in the case". *Id.* at 300–1, 93 S.Ct. at 1048–1049; *State v. Blankenship,* 830 S.W.2d 1, 7 (Mo. banc 1992). The hearsay statement here fails to meet either of the requirements for this hearsay exception. It neither exonerates Hutchison nor was made under circumstances that provide considerable assurance of its reliability.

First, Michael Salazar's confession to shooting the Yates brothers does not exonerate Hutchison. Although the statement certainly confirms that Salazar initially shot each of the victims and might have had a motive to make sure they died, the statement is not inconsistent with the possibility that Hutchison killed them. In fact, the entirety of the statement confirms Hutchison's role in the murders. A confession is not exonerating when it is consistent with a showing of guilt. *State v. Turner,* 623 S.W.2d 4, 9 (Mo. banc 1981), *cert. denied,* 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982).

Second, the statement was not made under circumstances that would establish its reliability. The confession was made to a police officer during interrogation several days after the murder, not "spontaneously ... to a close acquaintance shortly after the murder occurred." *See State v. Skillicorn,* 944 S.W.2d 877, 885 (Mo. banc 1997). In addition, Salazar's confession was not "in a real sense self incriminatory and unquestionably against interest." While admitting that he first shot the Yates brothers, Salazar pointed to Hutchison as the person who killed them. As such, the statement was partially exonerating and in Salazar's interest.

Finally, even if the confession was admissible under the penal interest exception, the court's failure to admit it was not prejudicial. One of the state's own witnesses, Freddie Lopez, testified that Salazar told him that he shot the brothers in Lopez's garage. This evidence was uncontroverted. The statements Hutchison complains of are duplicative of those already in evidence. *State v. Mahurin,* 799 S.W.2d 840, 846 (Mo. banc 1990), *cert. denied,* 502 U.S. 825, 112 S.Ct. 90, 116 L.Ed.2d 62 (1991). Point denied.

### IV. Testimony Describing Termination of Appellant's Interrogation

Hutchison's second preserved point on appeal is that the trial court erred by permitting Bill Wegrzyn to testify that Hutchison stopped answering questions during interrogation and immediately thereafter shouted obscenities. Hutchison claims that this testimony violated his state and federal constitutional right to not have his silence at interrogation be used against him at trial. *See Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). He also claims that the testimony regarding Hutchison's use of profanity was irrelevant and prejudicial.

The testimony Hutchison complains of is as follows:

Q: [By Prosecutor Selby] Now again, as an investigator on this case, did you interview Mr. Hutchison?

A: Yes, I did.

\* \* \* \* \* \*

Q. Did,—And before talking to him, did you read him any sort of rights?

A. Yes. We went over the Miranda rights with him real carefully and real thoroughly.

Q. Did he indicate to you that he understood those rights?

A. Yes, he did.

Q. And after discussing those rights with him, did he indicate that he was willing to talk to you?

A. He said he wanted to talk to us. He said he wasn't going to sign anything, but he wanted to talk to us.

\* \* \* \* \* \*

Q. Initially, what kind of information did you elicit from Mr. Hutchison?

A. His full name, his date of birth, his social security number, his address, a little bit of background information, and we told him what the interview was in reference to.

\* \* \* \* \* \*

Q. Then you had mentioned that then you began asking some more questions about the actual events?

A. Yes, sir. I did.

Q. What did you ask him?

A. I asked him specifically what he did the evening hours of December 31st and the early morning hours of January 1st.

Q. And what was his response to that question or those questions?

A. He said that he and Michael Salazar had gone to a party at Freddie Lopez's house in Verona, and at that party, they met two girls from Branson. One was a Lisa and one was a Barbara and they left that party and they went to Springfield.

Q. And then did you ask him any further questions after he told you that?

A. At that point, I asked him some details in reference to who those people were, what type of vehicle they went to Springfield in, what time they left the party, and what time they arrived in Springfield, and where they stayed when they went to Springfield.

Q. You might speak up a little bit. And what was Mr. Hutchison's response to—to those questions?

A. He didn't answer any of those questions. It was at this point that he was curious and started asking me about the details in reference to the homicide in particular.

Q. What was the defendant's—what was your response to the defendant's questions?

A. He wanted to know how they had been shot and I explained to him that it was a very brutal execution style killing and that the guys, the brothers, had been—had been shot in the head, in the eyes specifically, and Mr. Hutchison's attitude changed. He shouted some obscenities and we ended the conversation.

■ The testimony of Investigator Wegrzyn did not violate Hutchison's right to not have his silence used against him. Hutchison had waived his right to silence when he began answering Wegrzyn's questions. *State v. Schnick,* 819 S.W.2d 330, 336 (Mo. banc 1991). The record does not show that Hutchison reinvoked this right at the end of the interview. Instead, Hutchison simply started shouting "obscenities and we ended the conversation." A defendant who voluntarily speaks after receiving Miranda warnings may be impeached not only with his own statements but also with his "selective silence." *State v. Antwine,* 743 S.W.2d 51, 70 (Mo. banc 1987). *See, Antwine v. Delo,* 54 F.3d 1357 (8th Cir.1995).

■ Hutchison also claims that the testimony that he shouted obscenities at Wegrzyn after Wegrzyn told Hutchison how the Yates brothers were killed is irrelevant and prejudicial and should have been excluded. Trial courts retain broad discretion over issues of relevancy and admissibility of evidence, and we will not interfere with those decisions unless there is a clear showing of abuse of discretion. *State v. Tokar,* 918 S.W.2d 753, 770 (Mo. banc 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996). Evidence is relevant if it "logically tends to prove or disprove a fact in issue." *Id.* It is not unreasonable to interpret a sudden change in a defendant's demeanor during a custodial interrogation as conduct showing consciousness of guilt. The trial court was within its discretion in determining that the probative value of this possible inference outweighed any prejudice that might befall Hutchison as a result of the jury hearing Wegrzyn's testimony. This point is denied.

### V. Late Endorsement of John Galvan

■ Hutchison's third and final preserved point on appeal is that the trial court abused its discretion and committed reversible error when it allowed the state to endorse John Galvan as a witness for the penalty phase on the first day of trial, October 4, 1996. Galvan testified that several months prior to the murders, Hutchison stabbed Galvan while he was sleeping. Hutchison claims that an endorsement on the first day of trial rendered him unable to adequately investigate and obtain rebuttal evidence to Galvan's claim in time for the penalty phase proceeding that occurred on October 10th. Specifically, Hutchison avers that had he been able to investigate, he might have been able to uncover additional statements made by Galvan or others that refuted Galvan's testimony, as well as medical information revealing the true nature and extent of Galvan's injury and whether Galvan's injury was medically consistent with a stabbing.

■ A trial court has broad discretion in permitting the late endorsement of additional witnesses. *State v. Greathouse,* 627 S.W.2d 592, 595 (Mo.1982). Abuse of discretion may only be found when the endorsement causes fundamental unfairness. *State v. Sweet,* 796 S.W.2d 607, 617 n. 4 (Mo. banc 1990), *cert. denied,* 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 270 (1991). Four factors are generally used to determine whether a trial court abused its discretion in allowing the state to endorse a witness shortly before trial: (1) whether the accused waived the objection; (2) whether the state intended surprise or acted deceptively or in bad faith, intending to damage the accused; (3) whether the accused was surprised and suffered any disadvantage; and (4) whether the type of testimony given might readily have been contemplated. *Id.* at 613.

Hutchison concedes that the state did not intend surprise or deceit in endorsing Galvan on the first day of trial. Hutchison was assisted by copies of Galvan's medical records, which were supplied by the state "eleven minutes" after prosecutors received the records on October 8th. These records provided Hutchison with information about the "nature and extent" of Galvan's wounds. The trial court also gave Hutchison an opportunity to interview Galvan, after Galvan's appearance at a hearing that was held on October 8th to determine whether the court would allow Galvan to testify. This interview provided Hutchison with an opportunity to elicit "additional statements" from Galvan refuting Galvan's anticipated testimony and to conduct other necessary discovery. The prosecutors also told counsel for Hutchison that they were investigating Galvan as a potential witness some number of days before he was endorsed as a penalty phase witness. It is noteworthy that Hutchison did not seek a continuance from the trial court asking for more time to complete his investigation. Failure to seek a continuance leads to the inference that the late endorsement was not damaging to the complaining party. See State v. Farris, 243 S.W.2d 983, 987 (Mo.1951).

The factors listed above do not support a finding that the state's late endorsement caused Hutchison fundamental unfairness. The level of aggravating circumstances in this case overcomes any reasonable probability that the outcome of the sentencing phase would have been any different had Galvan's testimony been kept out. The trial court did not abuse its discretion by allowing the state to endorse John Galvan on October 4th. This point is denied.

### VI. Testimony of Jeremy Andrews

The first of Hutchison's unpreserved points on appeal is that the trial court erred by allowing Jeremy Andrews to testify that Hutchison punched Andrews in the head, for no apparent reason, during the Lopez's party. Hutchison claims that this evidence is irrelevant prior bad act evidence that served no evidentiary purpose and prejudiced the jury against him.

We find no manifest injustice or miscarriage of justice resulted from the admission of this evidence. Evidence that Hutchison punched a person at the party merely provided some context for the evening as a whole. We do not believe that admission of this evidence could have affected the jury's consideration adverse to appellant. This evidence simply pales in light of the more specific and incriminating evidence regarding the execution-style murders of Ronald and Brian Yates. Because we find no manifest injustice or miscarriage of justice, we do not review for plain error. State v. Simmons, 955 S.W.2d 729 (Mo. banc 1997); State v. Roberts, 948 S.W.2d 577 (Mo. banc 1997); State v. Clemons, 946 S.W.2d 206 (Mo. banc 1997), cert. denied, —— U.S. ——, 118 S.Ct. 416 , 139 L.Ed.2d 318 (1997); State v. Brown, 902 S.W.2d 278 (Mo. banc 1995), cert. denied, —— U.S. ——, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). This point is denied.

### VII. State's Opening Statement

Hutchison's second unpreserved point on appeal is that the trial court should have ordered sua sponte a mistrial due to a series of allegedly improper comments made by the prosecutor during opening statements. Specifically, Hutchison complains of the comments that the victims were found on a farm road near a "small German community of hardworking farming people"; that "the mother of the victims had to make funeral arrangements on New Year's Day while other mothers were welcoming their families into their homes, getting their dinners ready, black-eyed peas, people making New Year's resolutions to lose weight, be kinder to your kids ..."; that the bodies of the victims "were dumped like trash on the side of the road"; that the first shot to the head of the Ronald Yates "wasn't good enough for these defendants"; that Ron Yates was "sprawled out there like Christ crucified on the cross on that roadway"; and that in taking a bus to Arizona, "these defendants are already running, ladies and gentlemen. My grandpa says, 'the guilty are fleeing when none pursue.' That's what he used to say. They're already fleeing and there's no police pursuing them yet. They are high-tailing it out of town."

We find no manifest injustice or miscarriage of justice resulted from these opening statements. This is especially true because the prosecutor's comments were supported by the evidence at trial, *White v. State,* 939 S.W.2d 887, 902 (Mo. banc 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 365, 139 L.Ed.2d 284 (1997); the trial court instructed the jury at the outset of trial that opening statements were not to be considered evidence, *State v. George,* 921 S.W.2d 638, 644 (Mo.App.1996); and in light of the fact that the impact of an opening statement diminishes after introduction of evidence, instructions, and closing argument. Although the reference to Ronald Yates as "sprawled out there like Christ crucified on the cross" is offensive, it is inconceivable that the jury would have confused the victim with Jesus Christ or would have been unduly affected by this statement. Because we find no manifest injustice or miscarriage of justice, we do not review for plain error. *State v. Simmons,* 955 S.W.2d 729 (Mo. banc 1997); *State v. Roberts,* 948 S.W.2d 577 (Mo. banc 1997); *State v. Clemons,* 946 S.W.2d 206 (Mo. banc 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997); *State v. Brown,* 902 S.W.2d 278 (Mo. banc 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). Point denied.

### VIII. Penalty Phase Instructions

█ Hutchison's final unpreserved point on appeal is that the trial court erred by submitting penalty phase instructions 6 and 11 to the jury because the instructions invited the jury to take Michael Salazar's conduct into account when assessing whether Hutchison should get the death penalty.

The instructions at issue, which set out the statutory aggravating circumstances for a death sentence recommendation by the jury, modified Missouri Approved Criminal Jury Instruction 313.40(7)(B)[3] and [7] by adding the words "or aided in the killing".

The instructions read:

2. Whether the murder of Brian Yates involved depravity of mind and whether, as a result thereof, the murder was outrageously and wantonly vile, horrible and inhuman. You can make a determination of depravity of mind only if you find:

(1) That the defendant with the purpose of promoting the death of Brian Yates, killed *or aided in the killing* of Brian Yates after he was bound or otherwise rendered helpless by defendant or Michael Salazar and the defendant thereby exhibited a callous disregard for the sanctity of human life; and

(2) That the defendant with the purpose of promoting the death of Brian Yates, killed *or aided in the killing* of Brian Yates as a part of defendant's plan to kill more than one person and thereby exhibited a callous disregard *for* the sanctity of all human life. (Emphasis added.)

We find no manifest injustice or miscarriage of justice resulted from this modification. The modification does not remove the jury's focus from the "convicted murderer's own character, record and individual mindset as betrayed by [his] own conduct." *State v. Isa,* 850 S.W.2d 876, 902 (Mo. banc 1993). To the contrary, this language has the effect of focusing the jury entirely on Hutchison's conduct. Whether that conduct be "killing" or "aiding", Hutchison is clearly portrayed in these instructions as a single actor. Moreover, the particular modification found in these instructions (i.e., the addition of the words, "or aided in the killing") was taken directly from the Criminal Jury Instructions' Notes on Use. ("If depravity of mind is being submitted where the defendant acted with or *aided another in the killing,* these paragraphs may be modified accordingly.") (emphasis added). Because we find no manifest injustice or miscarriage of justice, we do not review for plain error. See *State v. Simmons,* 955 S.W.2d 729 (Mo. banc 1997); *State v. Roberts,* 948 S.W.2d 577 (Mo. banc 1997); *State v. Clemons,* 946 S.W.2d 206 (Mo. banc 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997); *State v. Brown,* 902 S.W.2d 278, (Mo. banc 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). This point is denied.

### IX. Section 565.035 Independent Review of Death Sentence

█ This Court is required to review, pursuant to section 565.035.3, RSMo 1994,

the sentence of death imposed in this case. We find no evidence that the sentence was imposed "under the influence of passion, prejudice, or any other arbitrary factor", and we find that the evidence supports the jury's finding of the two statutory aggravating circumstances under secs. 565.032.2(2) and (7). Section 565.035.3(1), (2). We further find that the sentence of death is not "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence, and the defendant." Sec. 565.035.3(3).

Only when "the case, taken as a whole, is plainly lacking circumstances consistent with those in similar cases in which the death penalty has been imposed" will resentencing be ordered. *State v. Ramsey*, 864 S.W.2d 320, 328 (Mo. banc 1993), *cert. denied*, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994). Our proportionality review serves the purpose of assuring that a death sentence is not a "freakish or wanton" punishment under the facts of the case. *Id.*

The facts of this case support both of the statutory aggravating circumstances that were submitted to the jury. The evidence showed that Ronald and Brian Yates had been rendered helpless by bullet wounds from Michael Salazar's .25 caliber pistol. Ronald, whose spinal cord was severed, would have been paralyzed from the waist down. Both Ronald and Brian, who sustained a serious abdominal wound, would have been in shock. Hutchison, who was in a position to help the brothers receive medical attention, refused to take Ronald and Brian Yates to a hospital and insisted that no one call the paramedics. Instead, Hutchison kicked Ronald Yates, dragged his broken body across the garage floor, and shoved both of the severely injured brothers into the trunk of a car. Hutchison then drove the car over bumpy country roads for ten to fifteen agonizing and terrifying minutes while searching for a place to shoot Ronald and Brian and dump their bodies. Evidence of a bloody fingerprint found on the inside of the car's trunk showed that at least one of the brothers was conscious during the ride. When Hutchison found the place he was looking for, he stopped the car, opened the trunk and proceeded to murder both Ronald

and Brian Yates by shooting multiple bullets into their eyes and ears.

This evidence supports the conclusion that Brandon Hutchison murdered Brian Yates "while engag[ing] in the commission of [the] unlawful homicide" of Ronald Yates. The evidence also supports the finding that the murders committed by Hutchison were "outrageously or wantonly vile, horrible or inhuman" and involved "depravity of mind."

These facts are consistent with death sentences affirmed in cases where victims were murdered in an execution-like fashion, *State v. Whitfield*, 939 S.W.2d 361 (Mo. banc 1997); *State v. Murray*, 744 S.W.2d 762 (Mo. banc 1988), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988); *State v. Foster*, 700 S.W.2d 440 (Mo. banc 1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986); where the murderer did not have prior contact with the criminal justice system, *State v. Richardson*, 923 S.W.2d 301 (Mo. banc 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996); where the murderer was no more than 21 years old, *State v. Simmons*, 944 S.W.2d 165 (Mo. banc 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 376, 139 L.Ed.2d 293 (1997); *State v. Richardson*, 923 S.W.2d 301 (Mo. banc 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996); *State v. Reuscher*, 827 S.W.2d 710 (Mo. banc 1992), *cert. denied*, 506 U.S. 837, 113 S.Ct. 114, 121 L.Ed.2d 71 (1992); *State v. Powell*, 798 S.W.2d 709 (Mo. banc 1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991); *State v. Jones*, 749 S.W.2d 356 (Mo. banc 1988), *cert. denied*, 488 U.S. 871, 109 S.Ct. 186, 102 L.Ed.2d 155 (1988); *State v. Wilkins*, 736 S.W.2d 409 (Mo. banc 1987), *aff'd sub. nom.*, *Stanford v. Kentucky*, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989); *State v. Lashley*, 667 S.W.2d 712 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984); *State v. Battle*, 661 S.W.2d 487 (Mo. banc 1983), *cert. denied*, 466 U.S. 993, 104 S.Ct. 2375, 80 L.Ed.2d 847 (1984); *State v. Blair*, 638 S.W.2d 739 (Mo. banc 1982), *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983); where the appellant may have been an accomplice, *State v. Skillicorn*, 944 S.W.2d 877 (Mo. banc

1997); *State v. Copeland,* 928 S.W.2d 828 (Mo. banc 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997); *State v. Gray,* 887 S.W.2d 369 (Mo. banc 1994), *cert. denied,* 514 U.S. 1042, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995); *State v. Shurn,* 866 S.W.2d 447 (Mo. banc 1993), *cert. denied,* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994); *State v. Reuscher,* 827 S.W.2d 710 (Mo. banc 1992), *cert. denied,* 506 U.S. 837, 113 S.Ct. 114, 121 L.Ed.2d 71 (1992); *State v. Kilgore,* 771 S.W.2d 57 (Mo. banc 1989), *cert. denied,* 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989); *State v. Schlup,* 724 S.W.2d 236 (Mo. banc 1987), *cert. denied,* 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987); *State v. Roberts,* 709 S.W.2d 857 (Mo. banc 1986), *cert. denied,* 479 U.S. 946, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986); *State v. Gilmore,* 681 S.W.2d 934 (Mo. banc 1984), *cert. denied,* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987); where the victims were rendered helpless before being killed, *State v. Tokar,* 918 S.W.2d 753 (Mo. banc 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996); *State v. McMillin,* 783 S.W.2d 82 (Mo. banc 1990), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990); *State v. Murray,* 744 S.W.2d 762 (Mo. banc 1988), *cert. denied,* 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988); *State v. Schneider,* 736 S.W.2d 392 (Mo. banc 1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988); where the murder was part of a plan to kill more than one person or where more than one person was actually murdered, *State v. Ramsey,* 864 S.W.2d 320 (Mo. banc 1993), *cert. denied,* 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); *State v. Mease,* 842 S.W.2d 98 (Mo. banc 1992), *cert. denied,* 508 U.S. 918, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993); *State v. Hunter,* 840 S.W.2d 850 (Mo. banc 1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 732 (1993); *State v. Ervin,* 835 S.W.2d 905 (Mo. banc 1992), *cert. denied,* 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); *State v. Powell,* 798 S.W.2d 709 (Mo. banc 1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991); *State v. Reese,* 795 S.W.2d 69 (Mo. banc 1990), *cert. denied,* 498 U.S. 1110, 111 S.Ct. 1025, 112 L.Ed.2d 1106 (1991); *State v. Sloan,* 756 S.W.2d 503 (Mo. banc 1988), *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1174, 103 L.Ed.2d 236 (1989); *State v. Griffin,* 756 S.W.2d 475 (Mo. banc 1988), *cert. denied,* 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989); *State v. Murray,* 744 S.W.2d 762 (Mo. banc 1988), *cert. denied,* 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988); *State v. Young,* 701 S.W.2d 429 (Mo. banc 1985), *cert. denied,* 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986); *State v. Byrd,* 676 S.W.2d 494 (Mo. banc 1984), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985).

Hutchison argues that the death sentence was imposed under the influence of passion and prejudice because the jury was allowed to hear testimony that Hutchison punched Jeremy Andrews and shouted obscenities at Bill Wegrzyn. This evidence has already been addressed and we reject this argument.

Hutchison also claims that the sentence is excessive or disproportionate to the penalty imposed in similar cases considering both the strength of the evidence and the defendant. He asserts that the evidence in this case is not strong enough because the state's case is based on circumstantial evidence provided by Freddie Lopez, a co-defendant with an interest in testifying against Hutchison. The circumstantial nature of the evidence is not dispositive to review under section 565.035. Circumstantial evidence is afforded the same weight as direct evidence. *See State v. Grim,* 854 S.W.2d 403, 406 (Mo. banc 1993), *cert. denied,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). Also, Hutchison overstates the importance of Freddie Lopez's testimony. Much of the evidence against Hutchison came from other sources. Kerry Lopez testified that she heard Hutchison say that something bad had happened in the shop and that she saw the Yates brothers lying on the floor of the garage and blood on Lopez's white Honda; Troy Evans and Frankie Young testified that Hutchison, Salazar and Lopez arrived at their trailer in a white Honda at 5 a.m. on the morning of the murders and that Hutchison wanted to shower because he had blood on his hand; the carpet from Lopez's white Honda was found beside the Yates brothers' dead bodies on the side of the road, and hair, blood and fiber analysis connected the carpet to both the Honda and the victims; Hutchi-

son and Salazar fled Missouri to Arizona the morning of the murders; and the murder weapon was found buried in the ground wrapped in Hutchison's tee-shirt.

█ Hutchison also asks this Court to consider his age at the time of murder, which was twenty-one, and the fact that he had "no significant criminal history" prior to this case. The presence of these mitigating circumstances have not barred the death sentence in the past. *Simmons,* 944 S.W.2d 165 (Mo. banc 1997), *cert. denied,* — U.S. —, 118 S.Ct. 376, 139 L.Ed.2d 293(1997); *Richardson,* 923 S.W.2d 301 (Mo. banc 1996); *Reuscher,* 827 S.W.2d 710 (Mo. banc 1992); *Powell,* 798 S.W.2d 709 (Mo. banc 1990); *Jones,* 749 S.W.2d 356 (Mo. banc 1988); *Wilkins,* 736 S.W.2d 409 (Mo. banc 1987); *Lashley,* 667 S.W.2d 712 (Mo. banc 1984); *Battle,* 661 S.W.2d 487 (Mo. banc 1983); *Blair,* 638 S.W.2d 739 (Mo. banc 1982).

### X. Conclusion

The judgment is affirmed.

BENTON, C.J., and LIMBAUGH, COVINGTON, WHITE and HOLSTEIN, JJ., concur.

ROBERTSON, J., concurs in result only.